[No. 66732-7-I. Division One. September 6, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH OZELL
CAMPBELL, *Appellant*.

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Melody M. Crick* and *Thomas C. Roberts, Deputies*, for respondent.

¶1 DWYER, C.J. — Kenneth Campbell was charged with two counts of assault in the second degree and one count of unlawful possession of a firearm in the first degree. Regarding the assault charges, the State sought firearm sentence enhancements on both counts. When instructing the jury as to its deliberative responsibilities with respect to

the special verdicts on the sentence enhancement allegations, the trial court correctly instructed the jurors as to the process by which each juror could arrive at an individual conclusion that the correct answer to the inquiry on a special verdict form was "yes," the process by which each juror could arrive at an individual conclusion that the correct answer to the inquiry was "no," and the process by which the jury could properly render a collective "yes" answer. To render a proper collective answer of "yes," jury unanimity was required. However, the trial court did not instruct the jurors as to how the jury could properly return a collective answer of "no"—that is, by either unanimously agreeing that the correct answer was "no" or by failing to reach unanimous agreement on the question. In this respect, the trial court erred.

¶2 This error was exacerbated when the trial court subsequently declined to answer the jury's direct question as to whether unanimity was required in order for the jury to collectively conclude that the State had failed to meet its burden of proof on the allegations referenced in the special verdicts. In determining not to answer the jury's question, other than to refer the jury to the instructions previously given, the trial court articulated a misapprehension of the legal effect of an absence of unanimity on a special verdict, likening it to a mistrial as opposed to an acquittal. Accordingly, the trial court abused its discretion in determining not to further instruct the jury.

¶3 Under the circumstances of this case, the instructional error cannot be considered harmless. Thus, we order the vacation of the special verdicts and remand the matter to the trial court for further proceedings consistent with this opinion.

I

¶4 On the night of December 3, 2008, a flurry of gunshots erupted as someone fired at a house eight or nine

times while several people, including a five-year-old girl, were sitting in its living room. As a result of this incident, Kenneth Campbell was charged with two counts of assault in the second degree and one count of unlawful possession of a firearm in the first degree. The State sought to add to Campbell's presumptive sentence two enhancements for committing the assaults while armed with a firearm.[1]

¶5 The jury was instructed that it must be unanimous in order to acquit or convict the defendant of the underlying crimes.[2] The jury also received special verdict forms for each charge of assault in the second degree. The trial court instructed the jury to return the special verdicts only if the jury determined that Campbell was guilty of the underlying crimes. Jury instruction 28, which instructed the jury with regard to the special verdict forms, stated:

> You will also be furnished with special verdict forms. If you find the defendant not guilty do not use the special verdict forms. If you find the defendant guilty, you will then use the special verdict forms and fill in the blank with the answer "yes" or "no" according to the decision you reach. In order to answer the special verdict forms "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question you must answer "no."

Clerk's Papers (CP) at 250.

¶6 After deliberating for a day and a half, the jury posed the following question to the court:

> In regards to the special verdict forms if we are not in unanimous agreement can we render the answer "no" or must we all agree unanimously "yes" or "no"?

---

[1] The State also alleged that Campbell should receive sentence enhancements for committing the crimes in order to gain, maintain, or further his position in the hierarchy of an organization. The jury returned special verdicts finding these allegations not proved.

[2] Jury instruction 27 reads in part, "Because this is a criminal case, each of you must agree for you to return a verdict. When all of you have so agreed, fill in the verdict forms to express your decision." Clerk's Papers at 249.

CP at 218. Pursuant to CrR 6.15(f)(1),[3] the trial court conferred with the parties to determine the proper response to the jury's question.

¶7 While noting the ambiguity of instruction 28, the trial court initially and correctly stated that "the legal answer is they don't have to unanimously agree to no. They would only have to unanimously agree to yes." Report of Proceedings (RP) at 697. Agreeing with the trial court's assertion, Campbell's counsel averred that it was "very, very clear" that the jury was *not* required to be unanimous in order to answer "no" to the special verdicts. RP at 699. Campbell's counsel asked the trial court to instruct the jurors that unanimity was required only for a "yes" verdict and that such agreement was not necessary for a "no" response. However, the State disagreed with Campbell's interpretation of the law and urged the court to instruct the jurors that they must be unanimous in order to answer "no" on the special verdicts.

¶8 After further consulting with both parties, the trial court mused that an absence of unanimity on special verdicts results in a "hung jury" and that "[t]he rule isn't that they can answer no, if they're not unanimous." RP at 699. Although the trial court recognized that referring the jury back to their original instructions had uncertain consequences, the judge was "not comfortable giving [the jurors] any additional information with regard to the instructions because it leads to treading on what they're doing." RP at 705. Thus, in response to the jury's question, the trial court directed the jury to "[p]lease refer to your jury instructions," rather than providing clarification as Campbell's counsel had requested. CP at 217.

¶9 The jury convicted Campbell of two counts of assault in the second degree and one count of unlawful possession of a firearm in the first degree. Answering "yes" to the

---

[3] CrR 6.15(f)(1) provides that "[t]he court shall notify the parties of the contents of the questions [from the deliberating jury] and provide them an opportunity to comment upon an appropriate response."

special verdicts, the jury further determined that Campbell was armed with a firearm during the commission of the assaults. Pursuant to RCW 9.94A.530(1)[4] and RCW 9.94A-.533(3)(b),[5] Campbell's sentence for these offenses included two consecutive 36-month firearm enhancements.

¶10 Campbell appeals.

## II

¶11 Campbell contends that the instructions given to the jury regarding the special verdicts were misleading and, thus, deprived him of a jury that was properly apprised of the law. We agree.

¶12 We review de novo claimed errors of law in jury instructions. *State v. Pirtle*, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995). In so doing, we consider "the context of the instructions as a whole," rather than viewing each instruction as an isolated mandate. *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). In order for jury instructions to be sufficient, they must be "readily understood and not misleading to the ordinary mind." *State v. Dana*, 73 Wn.2d 533, 537, 439 P.2d 403 (1968). Thus, the appropriate inquiry is whether the challenged instructions, when read as a whole, led the jurors to a mistaken belief that a unanimous decision was required in order to collectively answer "no" on the special verdicts.

---

[4] RCW 9.94A.530(1) provides in part, "The additional time for deadly weapon findings or for other adjustments as specified in RCW 9.94A.533 shall be added to the entire standard sentence range."

[5] RCW 9.94A.533(3) provides in part:

The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime . . . :

. . . .

(b) Three years for any felony defined under any law as a class B felony or with a statutory maximum sentence of ten years, or both.

¶13 The jury received instructions applicable to the underlying crimes as well as instructions specific to the special verdicts. The instructions applicable to the substantive crimes correctly informed the jurors of the process by which each juror could arrive at an individual conclusion that the defendant was guilty or not guilty and the process by which the jury could collectively determine whether the defendant was guilty or not guilty. Proper jury instructions for the special verdicts must similarly inform the jurors how to answer "yes" or "no," both individually and collectively. The instruction applicable to the special verdicts, instruction 28, properly informed the jurors that they must be unanimous in order to answer "yes." However, by failing to distinguish between the deliberative process required for a collective "no" response and an individual "no" response, the instruction failed to inform the jury how to collectively answer "no" to the special verdicts. Because instruction 28 did not inform the jury that anything short of a unanimous "yes" decision mandated a collective special verdict answer of "no," the instruction did not accurately inform the jurors of the law and, thus, was erroneous.

¶14 Moreover, reading the instructions as a whole does not cure the deficiency in instruction 28. The other instructions simply add to the uncertainty as to that which the law requires for a "no" answer to the special verdict forms by stressing that unanimity is required for either a "guilty" or "not guilty" response with regard to the underlying crimes. Instruction 26 informed the jurors of their "duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict." CP at 247. Instruction 27 instructed the jurors that "[b]ecause this is a criminal case, each of you must agree for you to return a verdict." CP at 249. Thus, the instructions given, when read in their entirety, did not properly instruct the jury as to the circumstances allowing a collective negative decision on the special verdicts.

¶15 This error was compounded when, in response to the jury's question, the trial court referred the jurors back to

the instructions already given rather than clarifying the applicable law. After a jury begins its deliberations, a trial court has the discretion to decide whether to provide additional instructions to the jury. *State v. Ng*, 110 Wn.2d 32, 42, 750 P.2d 632 (1988). Generally, a court has no duty to provide a jury with additional instructions after they have begun deliberating. *State v. Langdon*, 42 Wn. App. 715, 718, 713 P.2d 120 (1986). Where the instructions given accurately state the law, the trial court need not further instruct the jury. *See, e.g., Ng*, 110 Wn.2d at 42-44; *State v. Sublett*, 156 Wn. App. 160, 184, 231 P.3d 231 ("Because the instruction at issue is not ambiguous and . . . is a correct statement of law, the trial court did not abuse its discretion by refusing to further clarify the instruction for the jury."), *review granted*, 170 Wn.2d 1016 (2010). This has long been the law. *See Mott Iron Works v. Metro. Bank*, 90 Wash. 655, 658-60, 156 P. 864 (1916). However, where a jury's question to the court indicates an erroneous understanding of the applicable law, it is incumbent upon the trial court to issue a corrective instruction. *State v. Davenport*, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984). Here, even if the ambiguity of the instructions given was not apparent at the time they were issued, the jury's question identified their deficiency. Where the jury specifically asked whether it must be unanimous in order to return a "no" answer on the special verdicts and where the instructions, taken as a whole, did not properly inform the jury of the applicable law, the trial court abused its discretion by not issuing a clarifying instruction.

¶16 Moreover, in concluding that an absence of juror unanimity on the special verdicts results in a "hung jury," rather than an acquittal on the enhancement allegations, the trial court manifested a misunderstanding of the applicable law. As our Supreme Court has made clear, "special verdicts do not need to be unanimous in order to be final." *State v. Goldberg*, 149 Wn.2d 888, 895, 72 P.3d 1083 (2003). In *Goldberg*, the court concluded that the trial court erred

by treating a jury's nonunanimous decision on a special verdict as an indication of a deadlocked jury rather than as a final answer of "no."[6] 149 Wn.2d at 893. Our Supreme Court has since made clear that a nonunanimous jury determination on a special verdict operates as an acquittal as to the allegation at issue. *State v. Bashaw*, 169 Wn.2d 133, 146, 234 P.3d 195 (2010).[7] Thus, a "nonunanimous jury decision is a final determination that the State has not proved the special finding beyond a reasonable doubt." *Bashaw*, 169 Wn.2d at 146. By basing its decision not to answer the jury's query, at least in part, on a misapprehension of the applicable law, the trial court erred.

## III

¶17 The State contends that the instructional error was harmless and, thus, Campbell is not entitled to relief. We disagree.

██ ¶18 In this circumstance, a harmless error analysis is guided by *Bashaw*. To hold that this instructional error was harmless, we must conclude beyond a reasonable doubt that the jury's verdict would have been the same absent the error. *Bashaw*, 169 Wn.2d at 147. This inquiry is conducted, however, in light of the Supreme Court's observation that "[t]he result of the flawed deliberative process tells us little about what result the jury would have reached had it been given a correct instruction." *Bashaw*, 169 Wn.2d at 147.

██ ¶19 Initially, we note that the fact that the jury herein declared itself to have unanimously determined that "yes" was the correct answer to the challenged special verdicts does not render the error harmless. Such a conclusion was urged by the dissenting justices in *Bashaw*. *See*

---

[6] Thus, the trial court herein unfortunately mischaracterized the underlying holding in *Goldberg* when it observed that the rule in *Goldberg* "isn't that [the jurors] can answer no, if they're not unanimous." RP at 699.

[7] *Bashaw* was decided after Campbell's sentencing.

169 Wn.2d at 148-52 (Madsen, C.J., dissenting). But, of course, that position was rejected by the *Bashaw* majority, thus precluding the adoption of such an analysis by us.

¶20 Similarly, the Supreme Court's focus on the "flawed deliberative process" arising from the instructional error informs the harmless error analysis. As noted in *Bashaw*:

> [W]hen unanimity is required, jurors with reservations might not hold to their positions or may not raise additional questions that would lead to a different result. We cannot say with any confidence what might have occurred had the jury been properly instructed. We therefore cannot conclude beyond a reasonable doubt that the jury instruction error was harmless.

169 Wn.2d at 147-48. Thus, while allowing for the theoretical possibility of harmless error in this context, the Supreme Court has set the bar high, indeed, for such a finding to be justified.

¶21 The State urges us to conclude that the error is harmless on the basis of the strength of the State's evidence. We see several difficulties with that approach.

¶22 Our Supreme Court has taken a strict stance concerning harmless error in special verdict instructions. In *State v. Recuenco*, 154 Wn.2d 156, 159, 110 P.3d 188 (2005), *rev'd*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), *aff'd*, 163 Wn.2d 428, 180 P.3d 1276 (2008), the court reversed the imposition of a firearm enhancement to a defendant's sentence, even though the jury had unanimously found by special verdict that the defendant was armed with a deadly weapon and the only evidence of a weapon introduced at trial was of a firearm. Reversing the appellate court's determination that any error was harmless, our Supreme Court concluded that the imposition of the firearm enhancement without an explicit firearm finding by the jury was impermissible and was not harmless. *Recuenco*, 154 Wn.2d at 164.

¶23 The Supreme Court recently reiterated its restrictive view of harmless error in such circumstances. In *State*

*v. Williams-Walker*, 167 Wn.2d 889, 893-94, 225 P.3d 913 (2010), several defendants were charged and convicted of crimes for which the possession or use of a firearm was included as an element of the underlying offenses. The various trial courts had provided the juries with special verdict forms, directing the juries to answer in the affirmative if a defendant was proved to have been armed with a *deadly weapon* at the time of the commission of the underlying crimes. Subsequently, the sentencing courts imposed five-year firearm enhancements, rather than two-year deadly weapon enhancements. *Williams-Walker*, 167 Wn.2d at 898-99. Our Supreme Court held that sentencing judges are bound by the jury's findings on the special verdicts and that the trial courts erred by imposing more severe sentences than those mandated by the special verdicts. *Williams-Walker*, 167 Wn.2d at 899-900.

¶24 In reaching its decision, the Supreme Court refused to allow the strength of the evidence or the jury's findings on the elements of the underlying offenses to substitute for the necessary factual finding on the special verdict regarding the enhancement.[8] Declining "to hold that guilty verdicts alone are sufficient to authorize sentence enhancements," the court explained that

> [i]f we adopted this logic, a sentencing court could disregard altogether the statutory requirement that the jury find the defendant's use of a deadly weapon or firearm by special verdict. Such a result violates both the statutory requirements and the defendant's constitutional right to a jury trial.

*Williams-Walker*, 167 Wn.2d at 899. Thus, the sentencing court cannot rely on "findings implicit in the underlying guilty verdict." *Williams-Walker*, 167 Wn.2d at 900. Instead, "[a] sentence enhancement must not only be alleged, it also must be authorized by the jury in the form of a special

---

[8] The court also noted that the defendant has a state constitutional right, guaranteed by article I, sections 21 and 22, to have the jury make the factual findings on the enhancement allegations. *Williams-Walker*, 167 Wn.2d at 896.

verdict." *Williams-Walker*, 167 Wn.2d at 900. The State's argument to the contrary is unavailing.

¶25 The jury's verdicts on the underlying offenses cannot render harmless the instructional error on the special verdicts for yet another reason. In reaching its decisions on the underlying offenses, the jury was instructed that it *had to be unanimous in order to return a verdict in favor of the defendant*.[9] Thus, the deliberative process the jury went through in reaching its collective decision on the general verdict was identical to the deliberative process found wanting in *Bashaw*. It defies logic to conclude that where a jury's special verdict was improperly returned because the jury was led to believe that it must be unanimous in order to find in favor of the defendant, such an error can be conceived of as harmless on the basis that the same jury returned a general verdict making a similar finding after *also* being instructed that it must be unanimous in order to find in favor of the defendant. If being unanimous after being told the wrong thing once is not harmless, as *Bashaw* makes clear, how can the error be harmless simply because the jury was unanimous after being told that same thing twice? Logic dictates that it cannot be.

¶26 Supreme Court decisions—and simple logic—make clear that neither the strength of the State's evidence nor the jury's findings on a general verdict can substitute for a properly instructed jury's determination on a special verdict regarding sentence enhancements or aggravating factors. The error here was not harmless.

## IV

 ¶27 The parties to this action did not actively litigate the question of what remedy Campbell is entitled to as a result of prevailing on his claim. We note that our Supreme Court has determined that double jeopardy con-

---

[9] This instruction is, of course, correct with regard to a general verdict.

cerns are not implicated where retrial is authorized on aggravating factors unless the death penalty is at issue. *State v. Thomas*, 166 Wn.2d 380, 395, 208 P.3d 1107 (2009). Campbell assumes that *Bashaw* requires "resentencing without the firearm enhancements." Br. of Appellant at 20. *Bashaw* made no such pronouncement.[10]

¶28 Thus, we order relief identical to that ordered in *Bashaw*: "we reverse [both] sentence enhancements and remand the case to the trial court for further proceedings consistent with this opinion." 169 Wn.2d at 148. The parties may litigate the meaning of that directive on remand.

¶29 Reversed and remanded.

LAU, J., concurs.

¶30 APPELWICK, J. (dissenting) — I respectfully dissent from the majority's analysis. The instructions in this case did not constitute reversible error. But if any error did occur, I would hold that it was harmless. Therefore, I would affirm.

## I. The Trial Court Did Not Err in Instructing the Jury

¶31 The majority holds that the jury instructions in this case were erroneous because they could have misled the jury into believing that it was required to be unanimous in order to answer "no" on the special verdict. Majority at 400-03. I disagree.

¶32 The standard for clarity in jury instructions is higher than that for a statute because although courts may use statutory construction, juries lack these same interpretive tools. *State v. LeFaber*, 128 Wn.2d 896, 902, 913 P.2d 369 (1996), *overruled on other grounds by State v. O'Hara*,

---

[10] We note a major distinction between a court not accepting a proper verdict from the jury, as in *Goldberg*, and the court erring in instructing the jury, as in *Bashaw*.

167 Wn.2d 91, 217 P.3d 756 (2009). Accordingly, in order to be valid, the instructions must be manifestly apparent to the average juror. *Id.*; *State v. Irons*, 101 Wn. App. 544, 550, 4 P.3d 174 (2000).

¶33 Instructions 26 and 27 discussed the general verdict. Instruction 26 informed the jurors of their "duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict." Instruction 27 required that "each of you must agree for you to return a verdict." Instruction 28 discussed the special verdict. It stated:

> You will also be furnished with special verdict forms. If you find the defendant not guilty do not use the special verdict forms. If you find the defendant guilty, you will then use the special verdict forms and fill in the blank with the answer "yes" or "no" according to the decision you reach. In order to answer the special verdict forms "yes", you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question you must answer "no."

¶34 The majority states without citation that the jury should have been affirmatively instructed that it need not be unanimous to answer "no" to the special verdict. Majority at 401. The majority holds that the instructions as a whole implied to the jury that it was required to be unanimous in order to answer in the negative on the special verdict. *Id.* I disagree.

¶35 First, instruction 28 correctly stated the law. The instruction is identical to that given in *State v. Goldberg*, 149 Wn.2d 888, 893, 72 P.3d 1083 (2003). It requires unanimity to answer "yes." By contrast, it does not state a requirement to be unanimous to answer "no." *Id.* at 893-94. *Goldberg* did not find this instruction erroneous. *Id.* Nor did *State v. Bashaw*, 169 Wn.2d 133, 147, 234 P.3d 195 (2010). No case has.

¶36 Second, the instruction clearly indicated to the jury that it applied to the special verdict only: it stated the

phrase "special verdict" no less than four times. It never used the word "verdict" alone. If the special verdict was required to be answered unanimously in the negative, instructions 26 and 27 would be sufficient to so instruct the jury about both general and special verdicts. The portion of instruction 28 relating to unanimity would have been redundant. The inclusion of the distinct language in instruction 28 would cause an average juror reasonably to infer that the rules relating to the special verdict were different.

¶37 Third, the fact that the jury asked the question demonstrates that they perceived the difference. The court's response did not disabuse the jury of the distinction it questioned.

¶38 Read as a whole, the jury instructions imply that to answer "no" to the special verdict the jury need not be unanimous. This would have been manifestly apparent to an average juror. It was manifest to the jury in *Goldberg* when the jury answered "no," and it was manifest to this jury when it answered "yes." This instruction was not erroneous. And, since there was not error in the instruction, it was not error for the trial court not to further instruct the jury in response to the question.

## II. Any Error in the Jury Instructions Was Harmless

¶39 The majority may be correct that an express statement is preferable that unanimity is not required to answer "no" to the special verdict. But, even if the majority is correct that the instruction is erroneous for failure to make that express statement, I would affirm on the ground that the error was harmless.

¶40 In order to hold that a jury instruction error was harmless, "we must 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.' " *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). The State bears the

burden of proving beyond a reasonable doubt that the error was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

¶41 The majority relies on *State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005), *rev'd*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), *aff'd*, 163 Wn.2d 428, 180 P.3d 1276 (2008), *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010), and *Bashaw*, 169 Wn.2d 133, to hold that this court cannot apply a harmless error analysis to the type of error alleged. Majority at 404-06. Those cases are distinguishable and not binding on the facts of this case.

¶42 In *Recuenco*, the sentencing court imposed a firearm enhancement despite the fact that the State had only charged, and the jury had only been instructed, as to the lesser deadly weapon enhancement. 163 Wn.2d at 432. The firearm was a deadly weapon and the only weapon in evidence. *Id.* at 431. Nonetheless, our Supreme Court held that the trial court did not have the authority to impose a firearm enhancement where the State had failed to allege that enhancement, and that the lack of notice to the defendant on the firearm enhancement was not subject to a harmless error analysis. *Id.* at 434, 439, 442. Because the trial court exceeded its authority in imposing a sentence that was neither charged nor authorized by the jury, the trial court erred. *Id.* at 442.

¶43 But, this is not a remarkable proposition. The law is crystal clear after *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), that the jury, not a judge, must make findings of fact. The rule from *Recuenco* is simply that a trial court may not attribute to the jury the answer to a question that it was never asked.

¶44 *Williams-Walker* is similarly distinguishable. In that case, several defendants were charged and convicted of crimes for which the possession or use of a firearm was

included as an element of the underlying offenses. 167 Wn.2d at 898-99. The jury returned special verdicts finding use of a deadly weapon. *Id.* at 898. The sentencing court imposed firearm enhancements instead. *Id.* at 893-94, 898-99. Our Supreme Court held that because the trial court exceeded its authority by imposing an enhancement not based on a jury finding, the trial court erred. *Id.* at 899-900. The court then held that the harmless error doctrine does not apply where the trial court acts without the authority of the jury's factual findings. *Id.* at 900-01.

¶45 The result in *Williams-Walker* is the same as in *Recuenco*. Those cases merely stand for the proposition that a sentencing court does not have the authority to impose a sentence for an enhancement that was not charged by the State and found by a jury. Findings of fact in a jury trial are the province of the jury only. Any error on these grounds is not subject to a harmless error analysis. Again, this is not a remarkable proposition. This is settled law.

¶46 Reliance on *Recuenco* and *Williams-Walker* here is simply misplaced. The question in those cases was whether the court had the authority to enter its verdict without a jury finding. That is not at issue here. The trial court did not impose a firearm enhancement without authority to do so. Therefore, those cases do not preclude the application of the constitutional harmless error standard here.

¶47 *Bashaw* involved a jury instruction that affirmatively stated the need for a unanimous special verdict, either "yes" or "no." 169 Wn.2d at 139. The unanimity requirement for a "no" verdict was contrary to *Goldberg. Id.* at 147. Because juries are presumed to follow the instructions, the court had to conclude that the deliberative process was necessarily flawed. The same flaw is not present here. The jury instruction did not affirmatively misstate a unanimity requirement for a "no" on the special verdict. At most, it allowed a possibility for the jury to misinterpret the jury instruction to infer that unanimity requirement. But, the facts do not support a reasonable doubt that they did so.

¶48 We have only three facts to look to: instruction 28 itself, the jury's question about that instruction, and the trial court's response. As noted above, instruction 28 was distinct in its language from the unanimity requirement of the general verdict instructions. It expressly required unanimity for "yes" and did not expressly require unanimity for "no." It told the jury if it had a reasonable doubt it should return a "no" verdict. Unlike *Bashaw*, it did not prescribe an erroneous deliberative process.

¶49 The jury asked the trial court during deliberations:

> In regards to the special verdict forms if we are not in unanimous agreement can we render the answer "no" or must we all agree unanimously "yes" or "no"?

¶50 The majority concludes that the fact that the jury asked that question indicates that the instructions were deficient. Majority at 402. The premise is that the language so confused the jury that it believed it had to be unanimous to render a "no" on the special verdict and, therefore, it was coerced to render a unanimous "yes."

¶51 To the contrary, this question specifically confirms that the jury recognized that the language of Instruction 28, applicable only to the special verdict, was different from instructions 26 and 27 for the general verdict. Otherwise, the jury would have merely repeated the process it had followed for the general verdict without inquiry.

¶52 The trial court did nothing to disabuse them of the distinction they observed. It merely directed them to follow the instructions already given.

¶53 The underlying crime as charged included the element of the use of a firearm. The jury returned a unanimous verdict. The jury instructions required that the jury address the special verdict only if it had previously reached a unanimous verdict on the general question of guilt. We presume a jury follows the trial court's instruction. *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). Therefore, we properly conclude that the jury unanimously agreed

on the general verdict of guilty before it considered the special verdict question whether a firearm had been used in the commission of the crime. The special verdict was a unanimous "yes," as was the general verdict. Neither the instruction, which the jury perceived as different from the general-verdict instructions, nor the court's response suggests a flawed deliberative process. Nothing establishes a basis for reasonable doubt. The majority's assertion that the jury might have misunderstood this instruction and reached the opposite conclusion had it been properly instructed is mere conjecture. The State has met its burden to show any error was harmless beyond a reasonable doubt.

¶54 I would affirm.