IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 81122-3-I |
| ROBERT NICHOLAS POUNDS, | ) ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

BOWMAN, J. — Robert Nicholas Pounds seeks relief through this personal restraint petition (PRP) from his convictions of one count of firearm theft and one count of unlawful firearm possession. He claims he suffered prejudice when the trial court erroneously denied his pretrial suppression motion and committed several errors during the bifurcated jury trial. In the alternative, he contends his trial and appellate attorneys provided ineffective assistance of counsel. We disagree and deny the petition.

FACTS

On June 5, 2017 at 1:58 p.m., Huong Vuong called 911 to report a burglary at her neighbor William Hansen's house. Police responded within fifteen minutes and questioned the two people they found in the home, Pounds and Kimberly Ausbun. Ausbun told officers she knew Hansen and had permission to be in his home. Pounds told officers he was only there to "work on Kimberly's car." Hansen arrived shortly after police and confirmed Ausbun had permission to be there. He also told them he did not believe any crime had been committed

Citations and pin cites are based on the Westlaw online version of the cited material.

so the officers left the scene. Pounds and Ausbun also left, driving a red Ford minivan. Twenty minutes later, Hansen called 911 to report his gun safe had been broken into and several of his guns were missing.

About two hours later, police responded to the scene of an abandoned black Toyota Celica in a driveway a few miles away from Hansen's home. Witnesses told police that a woman recently left it there. When police searched the car, they found three handguns, including a Colt .22 revolver registered to Hansen. Vuong identified the Celica as the car she saw Ausbun "come from" when it was parked at Hansen's house a few days before the robbery. Hansen eventually identified all three of the revolvers found in the Celica as his property.

A few days later, Detective Benjamin Wheeler began investigating the gun theft. The detective knew both Pounds and Ausbun from prior police contacts. During his investigation, Detective Wheeler spoke with Vuong. She described seeing Pounds and Ausbun acting suspiciously at Hansen's house while Hansen was gone. She told the detective she called 911 after she watched Pounds carry a "cumbersome load" to the red minivan. Pounds put "a number of long items" in the van that appeared to be "three to four feet long, . . . wrapped in a blanket." Pounds and Ausbun then left the property together in the red minivan. Detective Wheeler also spoke with Hansen, who confirmed no one had permission to take his guns. Hansen's descriptions of the stolen guns and rifles matched the "size and length" of the items Vuong saw Pounds carrying from Hansen's house to the minivan.

2

On June 13, 2017, Detective Wheeler and Detective Sergeant Scott Dery went looking for Pounds so they could arrest him for gun theft, unlawful possession of a firearm,[1] and possibly burglary. They found the red minivan parked near a local business but before they could detain him, Pounds drove away. After a short distance, Pounds turned around and drove back toward the officers, who activated their emergency lights and "blocked him" with their unmarked patrol car. They arrested Pounds, placed him in handcuffs, and searched him incident to arrest. Officers recovered a .22 caliber "rimfire round" in Pounds' pants pocket. Detective Wheeler saw Ausbun walking nearby during Pounds' arrest.

Police later obtained a search warrant for the minivan and discovered a "military style" ammunition box, gun cleaning kits, and a yellow reflective vest in the van. Officers saw a handgun sitting on top of the vest and found two loaded handgun magazines inside a pocket. They found Pounds' identification card in the other vest pocket. Hansen later identified as his property the ammunition box, cleaning kits, handgun, and two magazines that officers found in the minivan.

The State charged Pounds with one count of first degree unlawful possession of a firearm and one count of theft of a firearm. A jury convicted Pounds of both counts in a bifurcated trial.[2] On direct appeal, Pounds' appellate counsel challenged only the sufficiency of the evidence to support the

---

[1] Detective Wheeler confirmed Pounds was a felon not allowed to possess firearms.

[2] In phase I, the jury issued a verdict on count 2, theft of a firearm. In phase II, the jury issued its verdict on count 1, unlawful possession of a firearm.

3

convictions. In an unpublished decision, we affirmed Pounds' convictions.[3] Pounds timely filed this PRP.

ANALYSIS

Relief through a PRP is extraordinary. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). To obtain relief, a petitioner must show (1) that he was actually and substantially prejudiced by a violation of constitutional rights or (2) that his trial suffered from a nonconstitutional defect that inherently led to a complete miscarriage of justice. Coats, 173 Wn.2d at 132; In re Pers. Restraint Petition of Brett, 142 Wn.2d 868, 874, 16 P.3d 601 (2001). The petitioner may not rely on bald assertions or conclusory allegations. In re Pers. Restraint Petition of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Rather, he must show by a preponderance of the evidence that the error caused him actual prejudice. In re Pers. Restraint Petition of Cook, 114 Wn.2d 802, 814, 792 P.2d 506 (1990).

Pounds argues the trial court erred by denying his motion to suppress evidence seized as a result of his unlawful arrest, admitting recordings of jail calls as evidence, refusing to grant his motion for a mistrial, and refusing to adequately clarify a jury question. Pounds also asserts ineffective assistance of both trial and appellate counsel. We address each claim of error in turn.

---

[3] State v. Pounds, No. 77863-3-I (Wash. Ct. App. June 10, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/778633.pdf, review denied, 194 Wn.2d 1003, 451 P.3d 325 (Nov. 6, 2019).

Probable Cause To Arrest

Pounds argues the trial court erred when it refused to suppress evidence seized as a result of his unlawful arrest. He contends Detective Wheeler lacked probable cause to arrest him without a warrant. We disagree.

We review the trial court's conclusions of law on a motion to suppress de novo and the findings of fact used to support those conclusions for substantial evidence. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence means enough evidence to persuade a fair-minded rational person of the truth of the finding. State v. Allen, 138 Wn. App. 463, 468, 157 P.3d 893 (2007). We treat unchallenged findings as verities on appeal. Allen, 138 Wn. App. at 468.[4]

Probable cause must support a physical arrest. Dunaway v. New York, 442 U.S. 200, 213, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). Probable cause exists "when the arresting officer is aware of facts or circumstances" sufficient to cause a reasonable officer to believe a person has committed a crime. State v. Gaddy, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). We use an objective standard to determine whether probable cause supports an arrest. Gaddy, 152 Wn.2d at 70 (citing State v. Graham, 130 Wn. 2d 711, 724, 927 P.2d 227 (1996)). It is not a technical inquiry. State v. Perez, 5 Wn. App. 2d 867, 872, 428 P.3d 1251 (2018). Instead, it rests on " 'the totality of facts and circumstances within the officer's knowledge at the time of the arrest.' " Perez, 5 Wn. App. 2d at 872 (quoting

---

[4] Pounds challenges several of the trial court's findings of fact. We note that the court identified the findings as "undisputed facts" below. In any event, we do not reach the issue as none of the challenged findings are relevant to whether Detective Wheeler had probable cause to arrest Pounds.

State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)); see also Wong Sun v. United States, 371 U.S. 471, 481-82, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). The burden is on the State to establish probable cause for an arrest. State v. Grande, 164 Wn.2d 135, 141, 187 P.3d 248 (2008).

Pounds argues Detective Wheeler lacked probable cause to arrest him because no witness observed him with the stolen guns, Pounds had no direct connection with Hansen, and no evidence directly tied Pounds to the Celica where police found the stolen guns.[5] But the evidence established that when he arrested Pounds, Detective Wheeler knew that Pounds was inside Hansen's home without permission, that he left with Ausbun carrying items consistent with the size and shape of Hansen's missing firearms, and that shortly after the theft, police found some of Hansen's stolen guns inside the Celica—a car associated with Ausbun—abandoned near Hansen's house. These facts are sufficient for a reasonable officer to believe Pounds took Hansen's guns.[6] The trial court did not err in denying Pounds' motion to suppress.

Jail Calls

Pounds claims the trial court erred by refusing to suppress recordings of jail calls that the State did not provide in discovery and by refusing to declare a

---

[5] Pounds also argues that his arrest was unlawful because the traffic stop was a pretext to investigate the firearm theft. The record does not support this claim. Detective Wheeler testified that he stopped Pounds not for any claimed traffic infraction but to arrest him for gun theft, unlawful possession of a firearm, and possibly burglary.

[6] Pounds also suggests that Detective Wheeler was subjectively motivated to target Pounds because of prior contacts with him. But we determine probable cause by objective facts, not the subjective opinion of an officer. State v. Huff, 64 Wn. App. 641, 645, 826 P.2d 698 (1992).

mistrial after the prosecutor called the recordings "jail calls" during closing argument.

A. Discovery Violation

Pounds claims the jail calls "were late discovery" that the court should have excluded and admission of the calls prejudiced him. We disagree.

The purpose of discovery rules is to protect against surprise that results in prejudice to the opposing party. State v. Bradfield, 29 Wn. App. 679, 682, 630 P.2d 494, review denied, 96 Wn.2d 1018 (1981). When a party violates a discovery rule or discovery order, the trial court "may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7)(i). Failure to produce evidence or identify witnesses timely may be "appropriately remedied by continuing trial to give the nonviolating party time to interview a new witness or prepare to address new evidence." State v. Hutchinson, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998), abrogated on other grounds by State v. Jackson, 195 Wn.2d 841, 467 P.3d 97 (2020). Exclusion or suppression of evidence or dismissal for a discovery violation are extraordinary remedies that the court should apply narrowly. Hutchinson, 135 Wn.2d at 882; State v. Smith, 67 Wn. App. 847, 852, 841 P.2d 65 (1992).

A trial court has broad discretion to determine the proper remedy for a discovery violation. Bradfield, 29 Wn. App. at 682. We review the court's rulings for an abuse of that discretion. State v. Barry, 184 Wn. App. 790, 797, 339 P.3d

200 (2014). The trial court abuses its discretion when it relies on untenable grounds or reasons or if its decision is manifestly unreasonable. Barry, 184 Wn. App. at 797.

Several months before trial, the State disclosed to Pounds that it had recordings of jail calls between Pounds and Ausbun. Pounds' attorney told the prosecutor not to provide them unless the State planned to use them at trial. During motions in limine, Pounds moved to exclude any nondisclosed evidence. The prosecutor told the court, "[E]very piece of evidence that I would seek to offer has already been provided to [the defense] in the process of discovery." Based on that representation, the court granted Pounds' motion.

After the court addressed the parties' written motions in limine, defense counsel said she would like to "address the Court on one more issue." Counsel asked the court to exclude Detective Wheeler's testimony that he knew Pounds and Ausbun as "boyfriend and girlfriend." She argued that the testimony was hearsay and unduly prejudicial to Pounds because it suggested the detective investigated Pounds in the past.

After consulting with the detective, the prosecutor conceded that the testimony was hearsay and told the court she would instead offer "four segments" of the jail calls between Pounds and Ausbun to establish their relationship. Pounds' attorney objected, arguing that she made a strategic decision to exclude Detective Wheeler's testimony about Pounds and Ausbun's relationship because the State said it would not offer the recordings. The trial court ruled that the State could use the recordings and offered to continue the

8

trial to allow Pounds' attorney time to assess the evidence. Pounds declined. The parties agreed to redact the recordings to remove direct evidence that Pounds was in custody during the calls.

Pounds fails to show that the State violated the rules of discovery or a court order. The State disclosed the evidence to Pounds several months before trial and offered to provide copies of the recordings even though the prosecutor had no plans at that time to use them at trial. Pounds declined. Even so, a continuance would have cured any prejudice to Pounds from the late disclosure. Pounds declined that relief as well. The trial court did not abuse its discretion in allowing the State to admit the recordings.

B. Mistrial

Pounds next argues that the court erred in refusing to grant a mistrial when the prosecutor identified the recordings as "jail calls" in closing argument. Again, we disagree.

We review a trial court's decision to deny a motion for mistrial for an abuse of discretion. State v. Jackson, 150 Wn.2d 251, 276, 76 P.3d 217 (2003); State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006). The court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Mak, 105 Wn.2d 692, 701, 718 P.2d 407 (1986).

In determining whether a trial irregularity is so prejudicial as to require a mistrial, we look to (1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other admissible evidence, and (3)

9

whether an instruction to disregard the remark could cure any irregularity. See State v. Weber, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983). We will reverse the trial court only if there is a substantial likelihood the irregularity affected the jury's verdict. State v. Rodriguez, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002).

Here, Pounds' only argument to support his motion for a mistrial was that the prosecutor referred to the telephone conversations between Pounds and Ausbun as "jail calls" during the State's closing argument in phase II of the trial. But the prosecutor's one reference to "jail calls" in the second phase of a week-long trial was fleeting.[7] And while the court did not allow direct evidence at trial that Pounds was in custody, the recordings themselves suggested that the calls took place while Pounds was incarcerated. For example, Ausbun told Pounds in one call that she had "put $40 on [his] books yesterday" and promised to "come see [him] tomorrow." Any irregularity was insignificant, cumulative of other evidence, and curable by a jury instruction. Pounds did not request a curative instruction. The trial court did not err by denying Pounds' motion for a mistrial.

Jury Question

Pounds claims he did not receive a fair trial because the trial court did not adequately clarify confusion raised in a jury question during deliberations. In the alternative, he argues his trial counsel was ineffective for not pointing the trial court to authority in support of her request that the court give the jury a more specific answer.

---

[7] Pounds also claims the prosecutor committed misconduct by violating "the parties' agreement not to disclose to the jury that the calls were jail calls." But even if the inadvertent comment amounts to misconduct, Pounds fails to show that it "inherently result[ed] in a complete miscarriage of justice." Cook, 114 Wn.2d at 812.

A.  Supplemental Jury Instruction

Jury instructions must accurately inform the jury of the relevant law.  State v. Henderson, 192 Wn.2d 508, 512, 430 P.3d 637 (2018).  Unless shown otherwise, we presume a jury follows the court's instructions.  State v. Swan, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990).  In response to a jury question after deliberations begin, CrR 6.15(f)(1) permits a trial court to provide supplemental written instructions on "any point of law."  We review a trial court's decision whether to give a supplemental instruction for abuse of discretion.  State v. Sublett, 176 Wn.2d 58, 82, 292 P.3d 715 (2012).

Here, jury instruction 6 told the jury, "A person is guilty of theft of a firearm if he or she commits a theft of any firearm."  The "to convict" jury instruction, number 7, told the jury that to convict Pounds of "theft of a firearm," it must find that the State proved each of these elements beyond a reasonable doubt:

(1)  That between June 5, 2017, and June 13, 2017, the defendant wrongfully obtained a .22 caliber revolver belonging to another;
(2)  A .22 caliber revolver is a firearm;
(3)  That the defendant intended to deprive the other person of the firearm; and
(4)  That this act occurred in the State of Washington.

And jury instruction 8 told the jury:

To convict the defendant of Theft of a Firearm, one particular act of Theft of a Firearm must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Theft of a Firearm.

During deliberations, jurors sent the following question to the court:

Instructions 6 & 8 state "theft of any firearm" and "theft of a firearm" on multiple occasions.  Instruction 7 specifically states "a .22 caliber revolver."

Are we ruling only on a .22 caliber <u>revolver</u> (7) or are we ruling on any <u>firearm</u> presented in the case (8)?

The court e-mailed the jury question to the parties and asked for their input. The State agreed with the court's proposed response to "re-read your instructions." Defense counsel asked the court to refer the jury back to instruction 7, the to-convict instruction, but the court declined.

Pounds relies on several cases to argue that the court's answer to the jurors' question failed to "clarify the applicable law for the jury," warranting reversal.[8] Each case is distinguishable. In <u>Gotcher</u> and <u>Davenport</u>, the prosecutors misstated the law in closing arguments and it was apparent from the juries' questions that the misstatements created confusion. <u>State v. Gotcher</u>, 52 Wn. App. 350, 355-56, 759 P.2d 1216 (1988); <u>State v. Davenport</u>, 100 Wn.2d 757, 759, 765, 675 P.2d 1213 (1984). Even so, the courts did not correct the errors in response to the questions. <u>Gotcher</u>, 52 Wn. App. at 356; <u>Davenport</u> 100 Wn.2d at 759. In <u>Campbell</u>, one of the jury instructions contained an erroneous statement of law that the court compounded in its answer to a jury question. <u>State v. Campbell</u>, 163 Wn. App. 394, 401-02, 260 P.3d 235 (2011), <u>rev'd on recons.</u>, 172 Wn. App. 1009 (2012). And in <u>Young</u>, the trial court refused to clarify the meaning of a technical term and instead referred the jury back to the instructions as a whole, even though none of the instructions contained any information about the term's meaning. <u>State v. Young</u>, 48 Wn. App. 406, 417, 739 P.2d 1170 (1987).

---

[8] Pounds appears to argue in his PRP that this error affected his phase II conviction for count 1, unlawful possession of a firearm. We reject this claim because the court specifically told the jury that instructions "6 through 12 of the Phase I instructions do not apply to Count 1."

12

Pounds does not argue that the jury instructions here were legally flawed or that the court did not sufficiently explain a technical term. Instead, he argues that the court should have directed the jury to the more specific to-convict instruction to clarify the law rather than the instructions as a whole. But we presume the jury followed the court's instruction to consider all of the instructions, including the to-convict instruction. While the trial court could have elected to answer the jury's question by referring it to the elements listed in instruction 7, it did not have to. See State v. Ng, 110 Wn.2d 32, 41, 750 P.2d 632 (1988); State v. Sutton, 18 Wn. App. 2d 38, 45, 489 P.3d 268 (2021).

## B. Ineffective Assistance of Trial Counsel

In the alternative, Pounds suggests that his trial attorney performed deficiently by not offering the trial court authority, presumably in the form of the cases discussed above, that would have compelled the court to give a more specific response to the jury inquiry.

To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, it deprived him of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When a claim of ineffective assistance stems from counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

Pounds acknowledges that his attorney requested a more specific instruction from the court but faults her for not supporting her request with case law. His claim rests on the incorrect premises that he was entitled to the more specific instruction and that cases like Campbell and Davenport would have compelled the court to refer the jury to the to-convict instruction. As discussed above, those cases do not support that proposition. Pounds fails to show ineffective assistance of counsel.

Ineffective Assistance of Appellate Counsel

Pounds argues that "[i]f this Court finds any of the issues raised by [him] in his petition have merit, then appellate counsel was deficient in failing to raise [them]."

A petitioner claiming ineffective assistance of appellate counsel on collateral review must show that "the legal issue that appellate counsel failed to raise had merit" and that he "was actually prejudiced by appellate counsel's failure to raise the issue." In re Pers. Restraint Petition of Dalluge, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004). "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance." In re Pers. Restraint of Lord, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). Instead, to establish deficient performance, the petitioner must show that his appellate counsel inadequately raised or failed to raise issues of merit and that the error led to prejudice. In re Pers. Restraint of Netherton, 177 Wn.2d 798, 801, 306 P.3d 918 (2013). Prejudice requires the petitioner to " 'show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed

on his appeal.' " <u>Dalluge</u>, 152 Wn.2d at 788[9] (quoting <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)).

Because Pounds does not prevail on any of the issues raised in his PRP, he fails to show ineffective assistance of appellate counsel.

We deny his petition.

WE CONCUR:

_____

_____     _____

---

[9] Emphasis omitted.