147 P.3d 581 (2006)
STATE of Washington, Respondent,
v.
Donovan Ben Patrick ALLEN, Petitioner.
No. 76912-5.
Supreme Court of Washington, En Banc.
Argued February 9, 2006.
Decided November 30, 2006.
*582 Reed Manley Benjamin Speir, Attorney at Law, University Place, WA, for Petitioner.
Susan Irene Baur, Cowlitz Co. Prosecutor's Office, Kelso, WA, Pamela Beth Loginsky, Washington Association of Prosecuting Attorney, Olympia, WA, for Respondent.
CHAMBERS, J.
¶ 1 We are asked to determine whether any rational trier of fact could have convicted Donovan Allen of aggravated first degree murder upon the evidence properly admitted in this case. Allen confessed to killing his mother but challenges, among other things, the sufficiency of the evidence that this killing was premeditated and aggravated by robbery. We affirm.

FACTS
¶ 2 About a month after Sharon Cox was killed in her Longview home, her son Allen told a police detective that he had attacked and killed his mother. Because he challenges the sufficiency of the evidence, we will recount some of that evidence in detail. He told the police:
Detective Davis: Can you tell me what happened when you got to her house?
Mr. Allen: We just started arguing about me getting to work on time, how I could lose my job, and me and my kids be [sic] on the street. We started arguing about that and it just blew up.
6 Report of Proceedings (RP) (Trial 2) at 1034-35. He told the police it began as an argument and became physical. Id. at 1035-36. He recounted that:
We wrestled a little bit. She pushed me back. She kept pushing and pushing and pushing. Into the bedroom. Argued more. She pushed me back. (Inaudible) me and fell against the bed. I stand back up and (inaudible) and lost it. I totally went blank and went ballistic and I had no control.
. . . .
We wrestled. And I was using my [telephone] cord against my mother.
. . . .
I strangled her with it.
Id. at 1036-37. He continued:
It snapped.
. . . .
Then we fought a little more. She was still alive. She tried to take off again.
. . .
I just turned around and went in the gun cabinet.
. . . .
I just grabbed my rifle.
. . . .
I swung it twice.
Detective Jacobs: Where did you swing that rifle at?
Mr. Allen: Her head.
. . . .
It flew out of my hands when the rifle connected, the stock broke.
. . . .
I took the rifle, cleaned it up.
. . . .
It had a little bit of blood on the stock.
Id. at 1039-41.
Detective Davis:. . . . And then what did you do next?
. . . .
Mr. Allen: Went back in the house.
. . . .
Detective Davis: And what did you do after you went back into the bedroom?
Mr. Allen: Found the cash box.
. . . .
Picked it up.
. . . .
I left with it.
I walked out of my mom's house. I went (inaudible) to Washington Way going to the slough. Then I realized what I had done, and I threw the cash box as hard as I could at the slough, and then ran like hell back.
. . . .

*583 I sat at the fireplace and then started (inaudible) what happened and ran to my mom.
. . . .
I checked for a pulse. . . . I don't know whether she was alive or not.
Id. at 1041-43.
¶ 3 Allen was charged with aggravated first degree murder, with robbery as the aggravator.[1] Allen successfully moved to exclude some evidence he believed was unfairly prejudicial, including a statement he made in a restaurant restroom to his friend and occasional overnight house guest, Chris Smith, "that he has killed before and can do it again." Clerk's Papers (CP) at 124. The first trial ended with a hung jury.
¶ 4 In the second trial, the trial judge renewed the exclusion of Allen's statement that he had killed before and could kill again. However, the jury heard a taped interview where Allen admitted killing his mother in a rage. Bonnie Walker, the mother of Allen's child, also testified that Allen had reacted violently to his own mother in the past. Walker said he once "had blown up at somethin' that his mother said to him, and destroyed our apartment. . . . He was throwin' stuff around. . . . [H]e punched holes in the wall and kicked a couple holes in the wall." 3 RP (Trial 2) at 562.
¶ 5 On direct examination of Smith, the following exchange took place:
State: And was there one point after [Allen] talked with the police where he made a statement to you about killing?
Smith: Uh-huh.
State: What did he say?
Smith: That he had killed before and he could kill again.
5 RP (Trial 2) at 911. Allen moved for a mistrial based on that exchange, arguing that it violated the exclusion order. After reviewing the trial court's oral exclusion order, the State acknowledged it had inadvertently violated the exclusion order but argued that the "killed before" statement was nevertheless admissible as a declaration against penal interest and therefore Allen was not prejudiced. The trial court agreed. The jury convicted Allen of aggravated first degree murder.
¶ 6 Allen was sentenced to life in prison without parole. The Court of Appeals affirmed (State v. Allen, noted at 126 Wash. App. 1017, 2005 WL 536082 (2005)) and we granted review (State v. Allen, 155 Wash.2d 1018, 124 P.3d 659 (2005)).

ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE
¶ 7 It is first degree murder to cause the death of another person with premeditated intent to kill. RCW 9A.32.030(1)(a). It is aggravated first degree murder to commit first degree murder with any of the aggravating circumstances listed in RCW 10.95.020. One of those aggravators is robbery. RCW 10.95.020(11)(a).
¶ 8 Allen does not challenge the jury's conclusion that he killed Cox. Rather, he challenges the sufficiency of the evidence that he premeditated the killing or committed it in the course or furtherance of a robbery. To prevail, he must show that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Finch, 137 Wash.2d 792, 835, 975 P.2d 967 (1999); State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980).

1. Premeditation
¶ 9 We turn first to his argument that there was insufficient evidence of premeditation. Premeditation is "`"the deliberate formation of and reflection upon the intent to take a human life"'" and involves "`"thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short."'" Finch, 137 Wash.2d at 831, 975 P.2d 967 (quoting State v. Pirtle, 127 Wash.2d 628, 644, 904 P.2d 245 (1995) (quoting State v. Gentry, 125 Wash.2d 570, 597-98, 888 P.2d 1105 (1995) and State v. *584 Ortiz, 119 Wash.2d 294, 312, 831 P.2d 1060 (1992))). It must span more than a moment in time. RCW 9A.32.020(1). Allen argues here that he lacked premeditation because he never expressed a preconceived intent to kill, he did not take weapons to his mother's home, and he himself was shocked at how their heated argument escalated into violence.[2]
¶ 10 We find sufficient evidence of premeditation to uphold the jury's verdict. First, a physical struggle over "an appreciable period of time" prior to strangulation is sufficient evidence of premeditation. State v. Harris, 62 Wash.2d 858, 868, 385 P.2d 18 (1963). Allen's altercation with his mother went from the kitchen to the bedroom and involved pushing and wrestling before escalating to strangulation.
¶ 11 Second, injuries inflicted by various means over a period of time can support a finding of premeditation. State v. Bingham, 105 Wash.2d 820, 825-26, 719 P.2d 109 (1986). The record shows that Allen used such "various means" of injuryfirst wrestling, then strangling with a phone cord, and finally beating with a rifle. Sufficient evidence of premeditation may also be found where the weapon used was not readily available, where multiple wounds are inflicted, or where the victim was struck from behind. Gentry, 125 Wash.2d at 599, 888 P.2d 1105. Here, the rifle used to beat Cox was not readily available. Allen retrieved it from a cabinet after the telephone cord snapped. Also, Cox's strangulation marks and fractured skull may be viewed as "multiple wounds." Finally, the fact that Cox was struck from behind is evidence of Allen's premeditation.
¶ 12 A rational jury could find beyond a reasonable doubt that Allen had the premeditated intent required for first degree murder. Therefore, we affirm the Court of Appeals conclusion that evidence of premeditation was sufficient to support the jury's verdict.

2. Robbery
¶ 13 A person is guilty of aggravated first degree murder if he commits first degree murder "in the course of, in furtherance of, or in immediate flight from" robbery in the first or second degree. RCW 10.95.020(11)(a). A person commits robbery when he "unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190. "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." Id. (emphasis added). Thus, to establish the aggravating factor of robbery in this case, the State had to prove beyond a reasonable doubt that Allen: (1) took the cashbox from his mother's person or in her presence, (2) against her will, and (3) used force or fear to take the cashbox or to prevent his mother from resisting the taking.[3]
¶ 14 We find considerable circumstantial evidence that Allen used force, at least in part, to obtain the cashbox. In addition to the argument between Allen and Cox regarding Allen's financial difficulties shortly before the murder and the testimony of Cox's husband regarding Cox's concerns over Allen's financial difficulties, another witness testified that Allen went through his money quickly and was often broke a week before payday. Cox's husband also testified that Allen had asked Cox for $400 to buy a car, but she refused. Allen, before the murder, had told a friend that his mother had a cashbox. Further, the cashbox was taken shortly after the murder and found near by. In addition, after the murder, Allen told a cell mate that he took the cashbox after killing Cox, that it *585 had about $1,100 in it, and that he had spent the money. Cox's husband testified that on the day of the murder the cashbox held approximately $1,500. There is sufficient evidence to affirm the jury's verdict.[4]

B. IMPROPER TESTIMONY
¶ 15 Allen moved for a mistrial, and then later for a new trial, on the ground the State violated a pretrial order excluding Allen's out of court statement that he had "killed before and could kill again." CP 121-26; 5 RP (Trial 2) at 914, 943, 948.[5] We review the trial court's denial of such motions for abuse of discretion. State v. Greiff, 141 Wash.2d 910, 921, 10 P.3d 390 (2000) (motion for a mistrial); Finch, 137 Wash.2d at 839, 975 P.2d 967 (prosecutorial misconduct); State v. Wilson, 71 Wash.2d 895, 899, 431 P.2d 221 (1967) (motion for a new trial). Discretion is abused when the judge's decision "is manifestly unreasonable or based upon untenable grounds." State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997). Thus, we must decide whether the trial court abused its discretion when it determined the prosecutor's improperly elicited testimony, when viewed against the backdrop of all the evidence, did not deprive Allen of a fair trial. State v. Post, 118 Wash.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992).
¶ 16 Allen calls our attention to the fact that the jury in his first trial both did not hear that statement and was unable to reach a verdict, while the second jury both heard the statement and convicted him. The State calls our attention to other differences between the two trials, including damaging testimony of a witness named Cory Opp that was stricken from the first trial but not the second.[6]
¶ 17 We in no way countenance violations of pretrial exclusion orders. But the trial court properly found that the statement was admissible as a statement of a party opponent, and that Allen was not prejudiced by the admission of an admissible statement. See ER 801(d)(2)(i). Given that, and given the other overwhelming evidence of guilt, we cannot say the trial court abused its discretion in denying Allen's motions.

CONCLUSION
¶ 18 We hold that the State presented sufficient evidence to support the jury's verdict that Allen's killing of his mother was premeditated and aggravated by robbery, and that the trial judge did not err by denying the motions for a mistrial and new trial. We affirm.
WE CONCUR: Justices BARBARA A. MADSEN, MARY E. FAIRHURST, JAMES M. JOHNSON, BOBBE J. BRIDGE.
ALEXANDER, C.J. (dissenting).
¶ 19 In my view, the elements of robbery are not established simply by showing the use of force preceded a theft. The State must demonstrate more. It must show that the use of force has a causal relationship with the theft, i.e., the force was used for the purpose of the theft. This is what constitutes robbery. Because in this case the State failed to show anything more than that Donovan Allen used force before committing theft, I dissent.
¶ 20 As the majority notes, a person commits robbery when he "unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190. "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to *586 the taking. . . ." Id. (emphasis added). Thus, for the State to establish the aggravating factor of robbery here, it had to prove beyond a reasonable doubt that Allen: (1) took the cashbox from his mother's person or in her presence, (2) did so against her will, and (3) used force or fear to take the cashbox or to prevent his mother from resisting the taking.[1] Therefore, the crucial question is whether Allen "used force or fear to obtain" the cashbox or "to prevent or overcome resistance" to his taking it.
¶ 21 To meet this standard, the State must show that the purpose behind Allen's use of force was to obtain the cashbox. Merely demonstrating that the use of force preceded the theft[2] does not amount to robbery. This is evident from a survey of this state's and other jurisdiction's treatment of the question.
¶ 22 This court has not construed the robbery statute so broadly as to encompass any theft associated with violence, no matter how unrelated. We have long since departed from the view that the use of force prior to the theft demonstrates robbery. See, e.g., State v. Handburgh, 119 Wash.2d 284, 293, 830 P.2d 641 (1992) (affirming use of force must be "either to obtain or retain possession" rather than merely preceding theft). In Handburgh, we confirmed the transactional view of robbery, which ended the emphasis upon when force was used to define robbery.
¶ 23 In our recent decision in State v. Johnson, 155 Wash.2d 609, 611, 121 P.3d 91 (2005), we also addressed "the transactional view of robbery." In Johnson, a man took a television-video cassette recorder combo from a store but then abandoned the stolen property in the parking lot as he tried to flee from two guards. We reversed his robbery conviction after concluding that he "was not attempting to retain the property when he punched the guard but was attempting to escape after abandoning it." Id. We said, "[T]he force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance `to the taking.'" Id. (emphasis added). Just as the theft in that case was not the reason for punching the guard, Allen described his taking of the cashbox in this case as an afterthought, unrelated to the strangling and beating of his mother. There was no evidence refuting this assertion. Because the theft was an afterthought, he committed theft  not robbery.
¶ 24 Another decision of this court, State v. Larson, 60 Wash.2d 833, 376 P.2d 537 (1962), is consistent with a narrow definition of robbery. There, we affirmed the robbery conviction of a man who stole a wallet from a drinking companion after knocking him out. In upholding his conviction, we said, "`[T]he mere taking goods from an unconscious person, without force, or the intent to use force, is not robbery, unless such unconsciousness was produced expressly for the purpose of taking the property in [the] charge of such person.'" Id. at 835, 376 P.2d 537 (emphasis added) (quoting 2 Francis Wharton, Wharton's Criminal Law § 1092, at 1390 (J.C. Ruppenthal ed., 12th ed.1932)). Here, the State has not shown that Allen, unlike the robber in Larson, used force "expressly for the purpose" of stealing from her. If the State has not shown this, then it has not shown that Allen committed robbery.
¶ 25 Other jurisdictions have taken the same approach when confronted with a situation like that presented here. Many state codes have moved away from the early majority *587 view[3] that any theft facilitated by violence is robbery. 3 Wayne R. LaFave, Substantive Criminal Law, § 20.3(e), at 191-92 (2d ed.2003). For example, the Supreme Judicial Court of Massachusetts confirmed this trend when it stated:
Robbery may be punished more severely than larceny from the person. The principal policy served by this greater punishment is deterrence of the use of force (and the accompanying risk to human life) to obtain money or other property. This policy is not served where the intent to steal is not formed until after the assault. We conclude, therefore, that where the intent to steal is no more than an afterthought to a previous assault, there is no robbery.
Commonwealth v. Moran, 387 Mass. 644, 442 N.E.2d 399, 401 (1982) (citations omitted). The Washington statute, by limiting robbery to the use of force for the purpose of theft, is in accord.
¶ 26 The majority, in contrast, finds sufficient evidence to support that Allen "used force or fear to take the cashbox or to prevent his mother from resisting the taking." Majority at 584. Its analysis of whether a robbery took place at all, however, is limited. It relies on several pieces of "considerable circumstantial evidence that Allen used force, at least in part, to obtain the cashbox." Id. The majority lists evidence that Allen had described financial difficulties to his friends, that Allen was short of money, and that he knew his mother had a cashbox. Id. But the majority reads too much into what this list shows. What it clearly demonstrates is that Allen had a reason to steal. But the leap that the majority makes is between the reason and the result. That is, the majority assumes that force was used to serve that reason. Circumstantial evidence of a reason to steal (in conjunction with undisputed use of force) is not evidence that the force was used to realize the reason. This is the critical gap in both the State's and the majority's reasoning.
¶ 27 I cannot agree that Allen murdered his mother "in the course of" or "in furtherance of" a robbery unless a robbery actually took place. The Court of Appeals concluded that Allen committed robbery because "he used deadly force against Cox in her bedroom, disabled her, and immediately thereafter unlawfully took a cashbox from her nightstand." State v. Allen, noted at 126 Wash. App. 1017, 2005 WL 536082, at *6, 2005 Wash.App. LEXIS 404, at *16. But as pointed out by the dissenting judge at the Court of Appeals, to disable someone and then take property as an afterthought is to commit theft, not robbery.[4]
¶ 28 Here, there is no doubt that Allen's violent conduct prevented Cox from resisting a theft. But there was no evidence that his purpose in attacking her was to facilitate *588 theft, much less that it was "expressly for the purpose of taking the property." See Larson, 60 Wash.2d at 835, 376 P.2d 537. Rather, the State proved that the purpose of Allen's violence was premeditated murder. By holding that Allen committed robbery simply because he beat his mother for another purpose (murder) before taking the cashbox, the majority essentially rewrites the statute to say, "Such force or fear must be used before obtaining possession of the property," not "to obtain" possession. But the legislature did not define robbery so broadly. And as early as Handburgh, we have recognized that robbery is not defined simply as the use of force prior to theft.
¶ 29 In sum, there is a lack of evidence that Allen intended to steal the cashbox before he killed his mother or that his purpose in mortally wounding her was to facilitate theft I conclude that no rational trier of fact could find proof beyond a reasonable doubt of robbery as an aggravating factor in the murder of Cox. Therefore, I would reverse the Court of Appeals.
WE CONCUR: Justices CHARLES W. JOHNSON, SUSAN OWENS, and RICHARD B. SANDERS.
NOTES
[1] Allen initially also was charged with felony harassment and intimidating a witness, but was not convicted.
[2] Gerald Cox, the victim's husband, testified that their only telephone was a cellular phone and he was unaware of any phone cord in the home. This suggests, although not conclusively, that Allen did bring to his mother's home the cord that he said he used to strangle her.
[3] Intent to steal is also an essential element of robbery. State v. Kjorsvik, 117 Wash.2d 93, 98, 812 P.2d 86 (1991) (citing State v. Hicks, 102 Wash.2d 182, 184, 683 P.2d 186 (1984)). Allen argued that "he did not even realize what he was doing with the cashbox, evidencing a lack of intent to steal." Opening Br. of Appellant at 13. However, there was sufficient evidence presented for the jury to conclude otherwise, including the fact that Allen and Cox were arguing about money when he killed her.
[4] We largely agree with the dissent. "Merely demonstrating that the use of force preceded the theft does not amount to robbery." Dissent at 586 (footnote omitted). But as surveyed above, there was sufficient evidence presented for a reasonable jury to find that robbery was one of Allen's purposes for killing. A reasonable jury could also have found, as the dissent would, that taking the cash box was an afterthought. This one did not.
[5] It appears the violation was accidental. 5 RP (Trial 2) at 930.
[6] Opp testified that Allen took him into a restaurant bathroom, held him against the wall, told him about the murder of Cox, and then "told me if I said a word he'd kill me." 5 RP (Trial 2) at 952. Opp also admitted having problems with his memory. Id. at 954.
[1] "[I]ntent to steal" is also an essential element of robbery, in addition to the statutory elements above. State v. Kjorsvik, 117 Wash.2d 93, 98, 812 P.2d 86 (1991) (citing State v. Hicks, 102 Wash.2d 182, 184, 683 P.2d 186 (1984)). Allen argued that "he did not even realize what he was doing with the cashbox, evidencing a lack of intent to steal." Opening Br. of Appellant at 13. He cites no case law or statutes supporting his argument that, because he took property impulsively, he lacked intent to steal. The intent to steal exists when there is intent to permanently deprive the owner of property, including when "the defendant acted with an intention to create an unreasonable risk of permanent loss to the owner." State v. Burnham, 19 Wash.App. 442, 445, 576 P.2d 917 (1978). By throwing the cashbox in the slough, Allen intentionally risked its permanent loss. Therefore, lack of intent to steal is not a reason to reverse the finding of robbery here.
[2] Theft is defined as: "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services. . . ." RCW 9A.56.020(1)(a).
[3] Other jurisdictions have been divided as to whether theft following unrelated violence is robbery. Carey v. United States, 111 U.S.App. D.C. 300, 296 F.2d 422 (1961), is a leading case holding that theft as an afterthought to killing does constitute robbery. In that case the defendant admitted stabbing his landlady after she insisted that his "lazy" wife move out. Id. at 423. He claimed, however, that he removed money from the victim's pocket after she was dead only to keep it from becoming bloodstained. The court affirmed the robbery conviction because robbery in that jurisdiction included taking from a person by sudden stealthy seizure or without her knowledge, and because a dead woman is still a "`person.'" Id. at 426; accord Metheny v. State, 359 Md. 576, 755 A.2d 1088, 1105 (2000) ("`If the force precedes the taking, the intent to steal need not coincide with the force.'" (quoting Stebbing v. State, 299 Md. 331, 473 A.2d 903, 915 (1984))); People v. Jordan, 303 Ill. 316, 135 N.E. 729, 730 (1922) ("If, as the result of a quarrel, a fight occurs in which one of the parties is overcome, and the other then, without having formed the intention before the fight began, takes the money of the vanquished one, the offense committed is robbery.").
[4] In dissent, Judge Armstrong wrote: "The question is whether the theft was really a robbery because Allen took the cashbox by overcoming Cox's will through force or threatened force. Merely connecting the theft to the killing through time and place does not elevate the theft to robbery. Neither does the majority's reasoning that Allen was relieved of having to take the box by force or threatened force because he had already disabled Cox. In essence, this argument is simply that if Allen had not already killed his mother, he would have had to rob her (use force) to get the box. Perhaps, but this theory assumes that Cox attacked his mother to get the cashbox. The State produced no evidence that he did. In fact, the State's theory was that Allen's final assault was the culmination of a long-developing feud. . . ." Allen, 2005 WL 536082, at *18, 2005 Wash.App. LEXIS 404, at *53 (Armstrong, J., dissenting).