IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 67227-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MYRON CLARK WYNN, | ) | UNPUBLISHED OPINION |
| AKA MYRON C. HOLDREDGE, JR., | ) | |
| AKA MICHAEL C. WYNN, and | ) | FILED: June 3, 2013 |
| AKA MICHAEL HOLDREDGE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

BECKER, J. — Myron Wynn argues insufficient evidence and an erroneous jury instruction warrant reversal of his conviction for felony murder based on robbery. Finding no error, we affirm the conviction.

The murder victim was Robert Wykel. Wykel disappeared in 1996. In 2003, Wykel was ruled dead. His body has never been found. Wynn, by all accounts the last person to see Wykel, was an early suspect. He gave inconsistent statements to police and others. Nevertheless, for several years the police were unable to prove that Wynn was responsible for Wykel's disappearance.

In 2000, Wynn's sister came forward with information about a diamond Wynn had with him when he moved back to Texas in late 1997. With this lead,

detectives developed proof that the diamond was from the ring Wykel always wore, and they renewed their investigation.

In 2009, the State charged Wynn with murder in the first degree, alleging he caused Wykel's death sometime in February or March 1996. An initial charge of premeditation was dropped, and the prosecution went forward on the theory that Wynn committed felony murder with the predicate felony being first or second degree robbery.

Wynn's first trial in 2010 ended with a deadlocked jury and a declaration of mistrial. In April 2011, a second jury found Wynn guilty as charged. Wynn moved for arrest of judgment under CrR 7.4, arguing there was insufficient proof he robbed or attempted to rob Wykel. The trial court denied this motion, concluding it could not be said that the jury's decision was unreasonable. The court noted that after beginning deliberations, the jury asked to hear all three of Wynn's statements to the police for a second time. Wynn's statements to the police are accurately described by the State as rife with evasive and inconsistent answers. Each time detectives confronted Wynn with new information they claimed to have discovered, he changed his version of his involvement in the events surrounding Wykel's disappearance to be consistent with the new information.

The court sentenced Wynn to 20 years, at the lower end of the standard range. Wynn appeals.

*Sufficiency of the Evidence To Prove Robbery*

To prove first degree felony murder, the State had to show Wynn caused Wykel's death while committing or attempting to commit robbery in the first or second degree, a felony, and in the course of, in furtherance of, or in immediate flight from the robbery. RCW 9A.32.030(1)(c).

Wykel was last seen accompanying Wynn on a visit to a remote wooded area known as Mother Nature's Acres. Wynn does not challenge the sufficiency of the evidence to prove that he caused Wykel's death. Rather, he contends that the evidence was insufficient to prove a robbery.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. Salinas, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will "by the use or threatened use of immediate force, violence, or fear of injury to that person." RCWA 9A.56.190. "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking . . . . Such taking

3

constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear." RCWA 9A.56.190. The intent to steal is an essential, nonstatutory element of the crime of robbery. State v. Kjorsvik, 117 Wn.2d 93, 98, 812 P.2d 86 (1991).

The State's trial theory was that Wynn caused Wykel's death in order to obtain or retain possession of approximately $1,000 that belonged to Wykel or of Wykel's diamond ring. The State summarizes the critical evidence as follows: "Wynn had taken a $1,000 deposit from Wykel for a car that Wynn was unable to produce, and Wykel had expressed his determination to either get the car or get his money back. Within days of Wykel's disappearance, Wynn presented his girlfriend with a diamond that bore an amazing resemblance to the diamond in the ring Wykel always wore. Wynn made numerous inconsistent statements to police, and incriminating statements to a friend."

The parties agree on the applicable legal principles. To constitute robbery, "the force must relate to the taking or retention of the property, either as force used directly in the taking or retention or as force used to prevent or overcome resistance 'to the taking.'" State v. Johnson, 155 Wn.2d 609, 611, 121 P.3d 91 (2005). The mere taking of goods from an unconscious person, without force or the intent to use force, is not robbery unless such unconsciousness was produced "'expressly for the purpose of taking the property in charge of such person.'" State v. Larson, 60 Wn.2d 833, 835, 376 P.2d 537 (1962), quoting 2

4

Wharton's Criminal Law (12th ed.) 1389, § 1092. The issue here is whether the evidence was sufficient to prove that Wynn used force against Wykel *for the purpose of* stealing his property. Wynn contends the State proved, at most, a use of force and a subsequent theft.

The most analogous case is State v. Allen, 159 Wn.2d 1, 147 P.3d 581 (2006). Donovan Allen was charged with the aggravated first degree murder of his mother, with robbery as the aggravating factor. The State proved the murder through a confession Allen made to police. In the confession, he described how he became angry with his mother, began wrestling with her, and killed her by strangling her with a telephone cord and hitting her with the stock of a rifle. He said that afterwards he went back in the house and found his mother's cashbox, then came back out and walked toward a slough. He said he then "realized what I had done, and I threw the cash box as hard as I could at the slough, and then ran like hell back." Allen, 159 Wn.2d at 4.

On appeal, the defendant in Allen argued insufficiency of the evidence to establish robbery. The State had to prove that the defendant "(1) took the cashbox from his mother's person or in her presence (2) against her will and (3) used force or fear to take the cashbox or to prevent his mother from resisting the taking." Allen, 159 Wn.2d at 9. The court found "considerable circumstantial evidence that Allen used force, at least in part, to obtain the cashbox." Allen, 159 Wn.2d at 9. While Allen's confession portrayed his removal of the cashbox as an afterthought, circumstantial evidence suggested that he intended from the

5

beginning of the encounter to take her money. He frequently was short of money; his mother had recently refused his request for $400 to buy a car; he had told a friend about the cashbox before the murder; the cashbox was found nearby after the murder; and he told a cellmate he took the cashbox after killing his mother and found $1,100 in it and spent it. Allen, 159 Wn.2d at 9-10.

Four dissenters acknowledged the circumstantial evidence was sufficient to prove Allen had a reason to steal, but they objected that it was insufficient to prove that Allen's attack on his mother was expressly for the purpose of stealing her cash. They said, "to disable someone and then take property as an afterthought is to commit theft, not robbery." Allen, 159 Wn.2d at 15 (Alexander, J., dissenting).

The majority responded in a footnote that the dissent was correct on the law but incorrect in its application of the sufficiency standard:

> We largely agree with the dissent. "Merely demonstrating that the use of force preceded the theft does not amount to robbery." Dissent at 12 (footnote omitted). But as surveyed above, there was sufficient evidence presented for a reasonable jury to find that robbery was one of Allen's purposes for killing. A reasonable jury could also have found, as the dissent would, that taking the cashbox was an afterthought. This one did not.

Allen, 159 Wn.2d at 10 n.4.

Wynn contends the evidence that he killed Wykel expressly for the purpose of taking his cash or diamond ring is even weaker than the evidence of motive in Allen. It is true that Wynn did not confess to taking anything from Wykel, and there was no direct evidence of the particular location and

circumstances of Wykel's death. These differences do not materially distinguish Wynn's case from Allen. The legal problem is the same: Was the circumstantial evidence sufficient to prove that a person who committed a homicide did so in order to steal?

Like in Allen, the State introduced substantial circumstantial evidence tending to prove that Wynn killed Wykel expressly for the purpose of stealing from him. There was similar evidence of motive: Wynn had financial troubles and no visible means of support beyond food and shelter provided by his girl friend.

The State's theory that Wynn stole $1,000 from Wykel under the pretense that it was a deposit for a car was supported by four witnesses who had been victims of Wynn's other "middleman" scams. There was evidence that Wykel was feeling "jerked around" and had grown tired of Wynn's excuses for not producing the car, a classic Ford Thunderbird Wynn had promised. Wykel had told his friend and neighbor John Ogdon, "I am going to get that car back or I am going to get my money back." The State drew the inference that Wykel called Wynn's bluff, and Wynn panicked and killed Wykel. The prosecutor's rebuttal closing argument explained the law of robbery: "Robbery; you can take $1,000 from somebody up front, you can retain it and then kill them, that's still robbery."

The evidence outlined above was strong enough to prove that Wynn killed Wykel in order to retain the cash deposit for the Thunderbird. Other evidence was sufficient to prove that Wynn killed Wykel for the opportunistic purpose of

stealing the diamond ring that Wykel always wore. Wykel's daughter was able to describe the ring in detail, enabling a jeweler who specializes in recreating lost pieces to make a drawing of the ring. The drawing matched the diamond Wynn took with him to Texas and sold to a relative, from whom the police eventually obtained it.

Wynn argues that if anything, the taking of the ring "was an afterthought" after the violent encounter that ended with Wykel's death, and thus cannot serve to prove a robbery occurred.

All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. Salinas, 119 Wn.2d at 201. A jury might have inferred that taking the ring did not occur to Wynn until after he killed Wykel. That would be a theft. But this jury found a robbery, and the finding reasonably could have been based on Wynn's taking of the ring. As in Allen, the evidence of the defendant's need for money was sufficient to permit a reasonable jury to infer that acquiring the ring was one of the defendant's purposes for the killing.

We conclude the evidence was sufficient to prove that Wynn killed Wykel either for the express purpose of retaining his ill-gotten $1,000 deposit on the nonexistent Thunderbird, or for the express purpose of taking Wykel's diamond ring, or both. Because the evidence is sufficient to prove Wynn killed Wykel to facilitate a robbery, it is also sufficient to prove the death occurred in the course of the robbery, as must be established to prove felony murder. See State v.

8

Hacheney, 160 Wn.2d 503, 518 n.6, 158 P.3d 1152 (2007), cert. denied, 552

U.S. 1148 (2008).

*Instruction on Robbery*

The State proposed instruction 9, the robbery instruction, and Wynn did

not object. The instruction given was the pattern instruction on robbery:

> A person commits the crime of robbery when he or she
> unlawfully and with intent to commit theft thereof takes personal
> property from the person of another against that person's will by the
> use or threatened use of immediate force, violence, or fear of injury
> to that person or to that person's property. The force or fear must
> be used to obtain or retain possession of the property or to prevent
> or overcome resistance to the taking, in either of which cases the
> degree of force is immaterial.
> *The taking constitutes robbery, even if death precedes the taking,*
> *whenever the taking and a homicide are part of the same transaction.*

Instruction 9 (emphasis added); WPIC 37.50.

Wynn now argues the last sentence is erroneous because it directs jurors

to find a defendant has committed robbery as a matter of law whenever a taking

and a killing are "part of the same transaction."

Jury instructions are sufficient when they allow trial counsel to argue their

respective theories of the case, are not misleading, and when read as a whole,

properly inform jurors of the applicable law. State v. Killingsworth, 166 Wn. App.

283, 288, 269 P.3d 1064, review denied, 174 Wn.2d 1007 (2012).

The language about "same transaction" in the last sentence of instruction

9 comes from a discussion of the proof requirements for robbery stated in State

v. Coe, 34 Wn.2d 336, 208 P.2d 863 (1949), and quoted in State v. Craig, 82

Wn.2d 777, 514 P.2d 151 (1973).

> The final contention made is that one cannot be guilty of robbery if the victim is a deceased person. As an abstract principle of law this is true, as essential elements of the crime of robbery would necessarily be lacking. However, that principle cannot apply here, because the robbery and the homicide were all a part of the same transaction, and the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the crime charged.

Coe, 34 Wn.2d at 341; Craig, 82 Wn.2d at 783.

Wynn agrees that a robbery can occur even though the taking is not completed until after the victim's death, as long as the taking and killing are part of the same transaction. He contends, however, that the instruction does not adequately inform the jury that the killing must constitute the force used to facilitate the taking. His concern derives from Hacheney, 160 Wn.2d at 516, a case where the victim's body was found in her home after it had been burned down. A jury convicted her husband of premeditated murder and found by special verdict the aggravating circumstance that he committed the murder in the course of committing first degree arson. The Supreme Court reversed the finding of an aggravating circumstance because, given the evidence, the murder must have been complete before the arson began. In other words, Hacheney committed arson to conceal the murder, but that did not prove he committed the murder in the course of the arson. As with the charge of felony murder, there must be a causal connection between the killing and the related felony; it is not enough that the felony and the killing are close to each other in time. Hacheney, 160 Wn.2d at 512-15. In so holding, the court rejected the broader interpretation

10

in Illinois of what "in the course of" means, and adhered to the rule set forth in State v. Golladay, 78 Wn.2d 121, 470 P.2d 191 (1970), overruled on other grounds by State v. Arndt, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976). The Golladay rule is that "for a homicide to have been committed in the course of a felony, the causal connection had to run such that the death was the probable consequence of the felony, but not the other way around." Hacheney, 160 Wn.2d at 515. The court referred to Craig as an opinion with language that "suggests a broader rule than was articulated in Golladay," but observed that Craig did not actually apply a broader rule because the case did not involve a felony committed to cover up or facilitate an escape from an already completed murder. Hacheney, 160 Wn.2d at 516.

Wynn argues that by using the "same transaction" language found in Craig, the standard jury instruction allows jurors to apply the broader rule the court rejected in Hacheney, 160 Wn.2d at 518, thus raising the possibility the jury found him guilty of felony murder simply because the killing of Wykel and the taking of his property occurred more or less at the same time. Wynn's argument focuses too narrowly on the last sentence of the instruction. A previous sentence in instruction 9 tells jurors that the force (which in a felony murder case will be the killing) "must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking." By informing jurors about the required purpose of the force, the instruction included exactly the context Wynn says it lacked: the necessity of finding that the killing constituted the force used to

11

facilitate the taking. We conclude the instruction properly informed the jurors of the applicable law. And since it was not erroneous, Wynn's claim that his attorneys were ineffective for failing to object to it also fails.

*Statement of Additional Grounds*

Wynn raises juror misconduct and evidentiary issues pursuant to RAP 10.10.

According to Wynn, one juror "kept bumping into" the attorneys from both sides, "once even being caught in the elevator looking into the box of evidence for the prosecutors." Also, the court learned from the bailiff that two other jurors were deliberating before the case was submitted to them. The court assigned these jurors as alternates and reinstated the first juror, who initially had been made an alternate, into the final jury.

The trial court considered these matters when they were raised in Wynn's posttrial motion. Wynn has not called our attention to any basis for concluding the court abused its discretion in dealing with the allegations of juror misconduct.

As to evidentiary issues, Wynn contends his attorneys should have let him testify on his own behalf, and he says "we argued every day on this issue." But Wynn does not say what key evidence he would have presented had he taken the stand, explain how his testimony would have made a difference, or argue his attorneys committed misconduct or were ineffective. We conclude he has not stated grounds that warrant additional review.

12

No. 67227-4-I/13

Affirmed.

WE CONCUR:

_Becker, J._

_Dwyer, J._          _Schindler, J._

13