THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

ANTHONY ENRICO HAMILTON,

Appellant.

No. 80473-1-I
(Consolidated with 79219-9-I)

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, A.C.J. —Anthony Hamilton appeals his 1990 second degree robbery conviction, arguing that the information failed to allege all essential elements of second degree robbery. He also contends his guilty plea should be vacated because the record of his plea hearing is insufficient for direct appellate review and his plea was not voluntary. Finally, he appeals a 2018 order correcting the duration of a no contact order in the judgment and sentence, arguing it was an improper ex parte order that rendered the judgment and sentence invalid. We disagree and affirm.

<u>FACTS</u>

The State charged Anthony Hamilton with second degree robbery on May 2, 1990. He appeared with counsel in King County Superior Court for a plea

hearing on May 29, 1990. The minute entry for this hearing stated "change of plea" and "cause continued to [May 30, 1990]." There is no transcript of the May 29 hearing and the parties cannot locate the court reporter's notes.

On May 30, 1990, he again appeared before the court and entered an Alford[1] plea—stating that he was not guilty of robbery, but recognized he would likely be found guilty at trial and wished to take advantage of the State's offered plea deal. The court asked Hamilton if he had reviewed the plea materials with his attorney and whether he understood that by pleading guilty he was waiving his trial rights. It further asked if his statements in the plea form were accurate and if all of his questions had been answered. Hamilton answered yes to each question and the court accepted the guilty plea. The court later sentenced Hamilton to 3 months' confinement and 12 months of community custody.

In 1998, a Pierce County Superior Court jury convicted Hamilton of first degree murder, first degree kidnapping and first degree robbery. That court sentenced Hamilton to life without parole as a persistent offender,[2] with one of his prior "strike" offenses being the 1990 second degree robbery conviction.[3]

In June 2017, Hamilton filed a CrR 7.8 motion to withdraw his 1990 guilty plea in King County Superior Court, claiming it was not knowing, intelligent and voluntary. For reasons not evident in this record, the court took no action on the

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).
[2] Washington voters passed Initiative 593, entitled "Persistent Offender Accountability Act" in November 1993, also known as the "three strikes and you're out" law, after Hamilton was convicted of second degree robbery in 1990 and before he was convicted in Pierce County of murder, kidnapping and first degree robbery. See State v. Thorne, 129 Wn.2d 736, 746, 921 P.2d 514 (1996). Under Initiative 593, robbery in the second degree was "a most serious offense," and thus a "strike." Id. at 747 (quoting former RCW 9.94A.030(23)(1993)).
[3] Hamilton's second "strike" was a 1991 conviction for first degree robbery.

motion. A year later, he filed a CrR 7.8 motion to correct his sentence, this time arguing that the failure of the original sentencing court to identify a specific term for the no contact order contained in the judgment and sentence rendered it invalid. He refiled the same motion in September 2018.

A month later, the court entered an "Order on Defendant's Motion to Correct Judgment & Sentence," specifying that the judgment "should reflect that the no contact [order] was for (10) TEN years." The order added, "However, even the 10 years has passed, Department of Corrections has terminated supervision and any [no contact order] in the judgment is hereby expired." Hamilton timely appealed this order.

In September 2019, Hamilton filed a notice of appeal of the 1990 judgment and sentence. He moved to extend the time to file his appeal, which this court granted because he had not been informed of his limited right to appeal in 1990. In February 2020, we consolidated Hamilton's two appeals.

In July 2020, Hamilton filed a motion to reverse his conviction, alleging there was an insufficient record of the 1990 proceedings for effective direct review. Pursuant to RAP 17.4(f), Hamilton provided a series of declarations establishing that the court reporter's notes from the May 29, 1990 hearing had been lost and that Hamilton's attorney in that case had no memory of the proceedings. Hamilton also attached his own declaration, dated May 22, 2020, in which he stated he did not understand the proceedings of his 1990 plea hearing, he had limited opportunity to review the case with his appointed attorney, and he simply followed the attorney's advice to plead guilty and answer all of the court's questions with

"yes." We denied this motion and Hamilton filed a motion for discretionary review with the Supreme Court.[4]

The Supreme Court commissioner stayed Hamilton's appeal pending its decision in State v. Jenks, No. 98496-4. The Court issued its opinion in May 2021, holding that ESSB 5288, which amended the persistent offender statute in 2019 to eliminate second degree robbery from the list of "strike" offenses, did not apply retroactively. 197 Wn.2d 708, 727, 487 P.3d 482 (2021). Shortly thereafter, the Supreme Court denied discretionary review of Hamilton's motion to reverse, noting that the legislature had, after Jenks, amended the persistent offender statute to make the statutory amendment retroactive, and acknowledging that Hamilton will be resentenced regardless of the outcome of this appeal.[5] The Supreme Court

---

[4] Supreme Court No. 99162-6.

[5] See Laws of 2021 ch. 141, § 1, codified at RCW 9.94A.647, which now provides:

> (1) In any criminal case wherein an offender has been sentenced as a persistent offender, the offender must have a resentencing hearing if a current or past conviction for robbery in the second degree was used as a basis for the finding that the offender was a persistent offender. The prosecuting attorney for the county in which any offender was sentenced as a persistent offender shall review each sentencing document. If a current or past conviction for robbery in the second degree was used as a basis for a finding that an offender was a persistent offender, the prosecuting attorney shall, or the offender may, make a motion for relief from sentence to the original sentencing court.

> (2) The sentencing court shall grant the motion if it finds that a current or past conviction for robbery in the second degree was used as a basis for a finding that the offender was a persistent offender and shall immediately set an expedited date for resentencing. At resentencing, the court shall sentence the offender as if robbery in the second degree was not a most serious offense at the time the original sentence was imposed.

> (3) Notwithstanding the provisions of RCW 9.94A.345, for purposes of resentencing under this section or sentencing any person as a persistent offender after July 25, 2021, robbery in the second degree shall not be considered a most serious offense regardless of whether the offense was committed before, on, or after the effective date of chapter 187, Laws of 2019 [July 28, 2019].

lifted the stay in Hamilton's case in October 2021 and it is now before us to address his consolidated appeal on the merits.

ANALYSIS

A.    Legal Adequacy of the Information

Hamilton challenges the legal adequacy of his 1990 information.  He argues that the information failed to include the element of second degree robbery that "force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking."  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution require that a charging document allege all essential elements of a crime, statutory and nonstatutory, to inform the defendant of the charges against him and to allow him to prepare his defense.  State v. Hopper, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); State v. Kjorsvik, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991); State v. Ralph, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997).

The sufficiency of an information is an issue of constitutional magnitude that may be raised for the first time on appeal.  RAP 2.5(a)(3); Kjorsvik, 117 Wn.2d at 102.  Because Hamilton challenges the charging document for the first time after the verdict was rendered, we construe the information liberally and ask (1) whether the necessary elements of the offense do not appear in any form, or by fair construction cannot be found, in the charging document; and (2) whether he was actually prejudiced by the faulty information.  Id. at 105-06.  We review the

- 5 -

constitutional sufficiency of an information de novo. State v. Johnson, 180 Wn. 2d 295, 300, 325 P.3d 135 (2014).

"A person is guilty of robbery in the second degree if he or she commits robbery." RCW 9A.56.210(1). RCW 9A.56.190 provides

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

The charging information alleged:

> That the defendant Anthony Enrico Hamilton in King County, Washington, on or about April 27, 1990, did unlawfully take personal property, to-wit: lawful money of the United States from the person and in the presence of Dannielle Johnson against her will, by the use or threatened use of immediate force, violence and fear of injury to such person or her property.

This language is verbatim to the first sentence of RCW 9A.56.190.

Hamilton contends that the information is deficient because it did not include the language of the second sentence of RCW 9A.56.190, that "force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." But this court rejected the same argument in State v. Phillips, 9 Wn. App. 2d 368, 444 P.3d 51, review denied, 194 Wn.2d 1007 (2019). In that case, we held that the first sentence of RCW 9A.56.190 sets forth the essential elements of robbery, while the second and third sentences are merely definitional. Id. at 377. We adhere to that ruling here.

Hamilton cites State v. Todd, 200 Wn. App. 879, 885-86, 403 P.3d 867 (2017), in which Division Three of this court held that the second sentence of RCW 9A.56.190 constituted a statutory element of the crime of robbery. But, as we explained in Phillips,

> The Todd opinion is best understood in light of its assertion that the Supreme Court has identified force or fear being used to obtain or retain possession of property as an element of robbery. See 200 Wn. App. at 885-86, 403 P.3d 867. In fact, the Supreme Court opinion to which the Todd opinion cited for this proposition, State v. Allen, 159 Wn.2d 1, 147 P.3d 581 (2006), did not so hold.

Phillips, 9 Wn. App. 2d at 379 (emphasis in original). In Allen, the defendant challenged the sufficiency of the evidence supporting his conviction for first degree murder with an aggravating circumstance of robbery. Allen, 159 Wn.2d at 7. It held that,

> to establish the aggravating factor of robbery in this case, the State had to prove beyond a reasonable doubt that Allen: (1) took the cashbox from his mother's person or in her presence, (2) against her will, and (3) used force or fear to take the cashbox or to prevent his mother from resisting the taking.

Id. at 9. Thus,

> the Allen court was not engaged in announcing a new statutory element of robbery. Rather, it was discussing what the State—in that case, as the case had been tried—had to establish to prove guilt of the charge. There are no statutory elements of robbery requiring proof of "cashboxes" or "mothers." Instead, the court was referencing the State's theory of the case at hand—and the court was evaluating whether the evidence adduced actually proved that theory. The Allen opinion did not purport to add to the statutory elements of robbery.

Phillips, 9 Wn. App. 2d at 380.[6]  We reject Hamilton's challenge to the legal sufficiency of his information for the reasons set out in Phillips.

B.        Voluntariness of Hamilton's Guilty Plea

Hamilton next argues he is entitled to withdraw his guilty plea to second degree robbery for several reasons.  First, he argues, the record below is insufficient to determine that his plea was in fact knowing, intelligent, and voluntary.  Second, he maintains he did not understand the nature of the Alford plea he entered or the consequences of the plea.

1.        Sufficiency of Record for Review

Hamilton contends that his conviction must be reversed because the absence of a report of proceedings on the May 29, 1990, hearing renders the record insufficient to permit effective appellate review.  We disagree.

A criminal defendant is "constitutionally entitled to a 'record of sufficient completeness' to permit effective appellate review of his or her claims."  State v. Tilton, 149 Wn.2d 775, 781, 72 P.3d 735 (2003) (quoting State v. Thomas, 70 Wn. App. 296, 298, 852 P.2d 1130 (1993)).  "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript."  Mayer v. City of Chicago, 404 U.S. 189, 194, 92 S. Ct. 410, 30 L. Ed. 2d 372 (1971).  Other methods of reporting trial proceedings may be constitutionally permissible if they permit effective review.  Tilton, 149 Wn.2d at 781.  "[W]here the affidavits are

---

[6] Our Supreme Court has granted review of this issue in State v. Derri, 17 Wn. App. 2d 376, 486 P.3d 901, review granted, 198 Wn.2d 1017 (2021).  Unless and until the Supreme Court instructs otherwise, we will continue to follow the well-reasoned analysis in Phillips.  Hamilton's motion to stay this case pending the resolution of Derri is thus denied.

unable to produce a record which satisfactorily recounts the events material to the issues on appeal, the appellate court must order a new trial." Id. at 783.

RAP 9.3 and 9.4 establish the procedure for reconstructing a record when the tape recording of the proceedings has been lost. State v. Waits, No. 37894-2-III, slip op. at 6 (January 20, 2022).[7] These rules authorize the parties to give a "fair and accurate" non-verbatim summary of testimony and events in the event of a lost report of proceedings. Id.

Although Hamilton tried to comply with these procedures, the age of the case made it impossible to create a narrative report of proceedings for May 29, 1990. Thirty years have passed since that hearing and, as Hamilton has noted, both the prosecutor and judge have since passed away and Hamilton's attorney cannot recall the proceeding. The State does not dispute these facts.

Hamilton argues that remand for a new trial is required by the Supreme Court's decision in State v. Larson, 62 Wn.2d 64, 381 P.2d 120 (1963). In that case, the defendant was convicted of attempted burglary after a jury trial. Id. On appeal, the parties determined that the court reporter's notes of the trial had been lost and that a verbatim statement of proceedings could not be furnished. Id. at 65. The State asked the trial court to furnish the defendant with a narrative statement of proceedings based on the trial court's own notes, but the defendant's appellate counsel contended he was unable to test the sufficiency of this narrative statement of proceedings since he did not participate in the trial. The Supreme Court agreed and concluded that the defendant was unable to test the sufficiency

---

[7] https://www.courts.wa.gov/opinions/pdf/378942_pub.pdf.

of completeness of the narrative statement of proceedings for an adequate review by this court or to determine what errors to assign for the purpose of obtaining an adequate review on appeal. Id. at 67.

Larson is distinguishable. The report of proceedings for Larson's entire jury trial was lost. We confront a completely different situation; the lost report of proceedings consists of a single hearing originally scheduled for the entry of a plea, but during which the court continued the plea hearing to the following day. We have a complete transcript of Hamilton's May 30, 1990 plea hearing, during which Hamilton was notified of his rights, questioned about his understanding of them, and discussed the consequences of his plea in open court.

Hamilton has not demonstrated how the contents of the transcript of the May 29, 1990 hearing would be material to this appeal. Hamilton is challenging the validity of his plea. The plea was not entered on May 29; his plea hearing took place on May 30. The record contains the complete verbatim report of proceedings for that hearing. We have an adequate record with which to review Hamilton's claims of error.

2. Voluntariness of Guilty Plea

Hamilton contends he is entitled to withdraw his guilty plea because he did not understand the nature and consequences of the plea. We reject this argument.

Generally, a party may raise on appeal only those issues raised at the trial court. In re Det. of Brown, 154 Wn. App. 116, 121, 225 P.3d 1028 (2010). But a defendant may raise the voluntariness of a plea for the first time on appeal if the defendant establishes a manifest error affecting a constitutional right. RAP

2.5(a)(3); State v. Walsh, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). Given the fundamental constitutional rights of an accused which are implicated when a defendant pleads guilty, a claim that a guilty plea pursuant to a plea agreement was involuntary is the kind of constitutional error that RAP 2.5(a) encompasses. Walsh, 143 Wn.2d at 7.

But we first preview the merits of the claimed constitutional error to determine whether the argument is likely to succeed. Id. at 8. Only if an error did occur do we address whether the error caused actual prejudice and was therefore manifest. State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).

Under CrR 4.2(f), "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice is one that is obvious, directly observable, overt, and not obscure. State v. Wilson, 162 Wn. App. 409, 414, 253 P.3d 1143 (2011). A plea must be knowing, voluntary, and intelligent to be valid. State v. Mendoza, 157 Wn. 2d 582, 587, 141 P.3d 49 (2006). For purposes of CrR 4.2(f), an involuntary plea is a per se instance where a manifest injustice exists. Wilson, 162 Wn. App. at 414. The defendant bears the burden of proving a manifest injustice required for withdrawal of a guilty plea. State v. Ross, 129 Wn.2d 279, 283-84, 916 P.2d 405 (1996).

When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary. State v. Smith, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). A judge's on-the-record inquiry of a defendant who signs a plea agreement strengthens the

inference of voluntariness. In re Det. of Scott, 150 Wn. App. 414, 427, 208 P.3d 1211 (2009). Indeed, "[w]hen the judge goes on to inquire orally of the defendant and satisfies himself on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." State v. Branch, 129 Wn.2d 635, 642 n.2, 919 P.2d 1228 (1996) (quoting State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)). To overcome this presumption, the defendant must present some evidence of involuntariness beyond his self-serving allegations. Scott, 150 Wn. App. at 427.

Hamilton first contends the record does not demonstrate that he understood the elements of the charged crime. The record does not support this argument.

A defendant must understand the facts of his case in relation to the elements of the crime charged, protecting the defendant from pleading guilty without understanding that the alleged conduct falls within the charged crime. State v. Codiga, 162 Wn.2d 912, 923-24, 175 P.3d 1082 (2008).

On May 23, 1990, Hamilton signed a plea agreement with the State in which he agreed to plead guilty as charged in exchange for the State's recommendation of a three-month jail sentence. He then appeared with counsel for a plea hearing on May 30, 1990. On that day, he signed a written "Statement of Defendant on Plea of Guilty." In this document, Hamilton stated "I have been informed and fully understand that I am charged with the crime(s) of robbery in the second degree." In the section of the statement reserved for the elements of the crime, Hamilton wrote "see attached information." Although Hamilton argues that no information was attached to this document, on the next page he certified that "I have been

- 12 -

given a copy of the information."  The information laid out the elements of second degree robbery.

Moreover, the documents Hamilton signed made it clear that he did not believe he was guilty of the charged crime, but recognized he would probably be found guilty, and wanted to take advantage of the plea deal to avoid a longer prison sentence:

> I am not guilty of robbery, however, I want to plead guilty in order to take advantage of the prosecutor's recommendation, and to avoid possibly more serious consequences if this case went to trial.  I have reviewed the . . . case materials with my lawyer, and I agree that there is a substantial likelihood I would be found guilty at a trial.

At the May 30 hearing, the court conducted an on-record inquiry and asked Hamilton if he had reviewed the entire plea form with his attorney, to which Hamilton responded "Yes ma'am."  The court asked if Hamilton understood his trial rights, understood that by pleading guilty he waived those rights, and if all of Hamilton's questions had been answered.  Hamilton responded "Yes" to each inquiry.

The court explicitly discussed with Hamilton that he agreed that the court could review the determination of probable cause to verify that there was a factual basis for the plea and to determine the appropriate sentence, but that he was not agreeing that it could be relied on as a basis for imposing an exceptional sentence. Hamilton indicated that he understood this part of the agreement.  Id.  Hamilton reaffirmed that he had read his entire plea statement, that he understood his sentence, and had no questions about the process.

- 13 -

Following this inquiry, the trial court found that Hamilton's decision to plead guilty was knowing, intelligent, and voluntary and it accepted his guilty plea. Because the record shows Hamilton acknowledged in writing and orally at the plea hearing that he understood the charge against him, including the elements of the crime, there is an extremely strong presumption that Hamilton's plea was voluntary.

Next, Hamilton argues that the record does not demonstrate that he understood the nature of his Alford plea. Again, we disagree.

An Alford plea is inherently equivocal in the sense that it requires a defendant to plead guilty without admitting guilt. In re Pers. Restraint of Montoya, 109 Wn.2d 270, 280, 744 P.2d 340 (1987) (abrogated on other grounds by State v. Buckman, 190 Wn. 2d 51, 61, 409 P.3d 193 (2018)). This alone, however, does not render an otherwise voluntary and intelligent guilty plea invalid. Id. "An Alford plea is valid when it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " State v. Stowe, 71 Wn. App. 182, 187, 858 P.2d 267 (1993) (quoting Montoya, 109 Wn.2d at 280).

In the context of an Alford plea, the accused must understand the nature and consequences of the plea bargain and must decide that pleading guilty is in his best interest. In re Pers. Restraint of Barr, 102 Wn.2d 265, 270, 684 P.2d 712 (1984).

> For the trial court to make the proper evaluation, the plea bargain must be fully disclosed. The trial court must find a factual basis to support the original charge, and determine that defendant understands the relationship of his conduct to that charge. Defendant must be aware that the evidence available to the State on the original offense is sufficient to convince a jury of his guilt.

- 14 -

Id.

These criteria were satisfied here. The record convinces us that Hamilton chose to plead guilty to obtain the benefit of a recommended three-month sentence. He understood that the probable cause certification was sufficient to establish a factual basis for the second degree robbery charge and that he was likely to be found guilty if he went to trial on that charge.

Hamilton contends that, in the Alford plea context, the trial court's colloquy was not sufficiently probing to ensure he understood he was pleading guilty to a crime he did not commit. He relies on In Pers. Restraint of Cross, 178 Wn.2d 519, 309 P.3d 1186 (2013), in which our Supreme Court upheld a death sentence based on an Alford plea. In doing so, the court relied on the fact that the trial court had

> painstakingly walked Cross through the elements of the crimes of which he was charged, his potential defenses, the rights he was relinquishing, and the punishment he faced. On the issues of premeditation and common scheme or plan, the judge had Cross state in his own words his understanding of the meaning of those concepts.

Id. at 530.

But Cross does not stand for the proposition that an Alford plea is only valid if a trial court engages in the extensive inquiry that occurred in Cross's case. The issue there was whether a death sentence could be predicated on an Alford plea. Id. at 529. The trial court engaged in an in-depth inquiry with Cross because he was facing the very serious risk of being sentenced to death. We simply cannot equate Cross to this case.

- 15 -

Hamilton also relies on State v. S.M., 100 Wn. App. 401, 996 P.2d 1111 (2000), in which Division Two of this court reversed the conviction of a 12-year-old defendant for three counts of first degree rape of a child, concluding that the defendant's plea agreement was not voluntary. But that case is also distinguishable. S.M.'s counsel was not present when he signed the plea form and his only contact with appointed counsel was a brief meeting immediately before the plea hearing, during which counsel did not discuss the substance of the plea with S.M. Id. at 403-04. On appeal, the court concluded that this colloquy was inadequate because "the record does not show that S.M. understood the law in relation to the facts." Id. at 414-15.

> At the plea hearing, the trial court asked S.M. whether he knew the meaning of "sexual intercourse" but it did not ask what he thought it meant or inquire into his understanding of the nature of the charges.
> . . .
>
> S.M.'s plea statement does not provide the necessary factual basis for the charge of rape of a child. It states only that "[i]n Cowlitz County in the Spring of 1994, I had sexual contact with my Brother who is age 10 in 1994. It happened three times." This statement lacks any indication that S.M. understood that the crime of rape of a child required penetration. Nor does S.M.'s simple "yes" response to the court's oral question about the meaning of sexual intercourse cure this deficiency.
>
> The plea statement is a critical indicator of S.M.'s understanding about the nature of the charges, especially under the circumstances here where the record shows that S.M. did not have the full assistance of counsel before entering his plea.

Id. at 415.

Unlike S.M., there is no indication that Hamilton lacked the full assistance of counsel before entering his plea. And while Hamilton may have been a youthful offender at the age of 20, he certainly was not 12, as was the case in S.M. The

- 16 -

legal meaning to the phrase "sexual intercourse" may be difficult for a 12-year-old to understand. We cannot say the same for the phrase "robbery," particularly as laid out in the information and as detailed in the accompanying probable cause certification. Hamilton affirmed in his plea that he had reviewed the case materials, including the charging information, with counsel and was voluntarily pleading guilty to a crime he did not believe he committed to gain a clear benefit. The court repeatedly inquired into Hamilton's understanding of the consequences of his plea, specifically the sentencing range of 3 to 9 months, and the waiver of his trial rights and asked if he had any questions concerning the process. None of this occurred in S.M.

Despite Hamilton's suggestion to the contrary, there is no due process requirement that the court orally question a defendant to ascertain whether he understands the consequences of the plea and the nature of the offense. In re Pers. Restraint of Keene, 95 Wn.2d 203, 206-07, 622 P.2d 360 (1980). In Keene, our Supreme Court upheld a defendant's forgery conviction where the plea was prepared with the help of an attorney, the defendant verbally informed the court that his plea statement was truthful, and the defendant acknowledged receiving a copy of the charging information containing the facts and elements of the crime. Id. at 206-08. We reach the same conclusion here. Hamilton argues Keene is distinguishable because the defendant in that case did not enter an Alford plea. This argument is unpersuasive. As in Keene, the record here demonstrates that Hamilton was apprised of the nature of his offense multiple times. He acknowledged in his plea statement that he received this information, went over it

- 17 -

with his attorney, and understood it. The trial court then explicitly had Hamilton confirm that he understood that he was pleading guilty to a crime he did not commit to take advantage of a plea offer from the State and that the court would review the probable cause determination to ensure there was a factual basis for the plea.

The plea documentation and colloquy were adequate to ensure Hamilton's Alford plea was voluntary.

Finally, in his statement of additional grounds, Hamilton argues that his plea was invalid because he was not informed that his conviction could be used as a strike offense. He also contends he was affirmatively misinformed that the maximum sentence for his crime was 5, rather than 10 years.

Before a trial court accepts a guilty plea, the defendant must be informed of all direct consequences of the plea. Mendoza, 157 Wn.2d at 588 Whether a consequence is direct turns on whether "the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996) (quotation marks omitted). Failing to inform a defendant of, or misinforming the defendant about, collateral consequences of a plea does not render that plea involuntary. State v. Gregg, 196 Wn.2d 473, 485, 474 P.3d 539 (2020).

Hamilton argues he did not know that his conviction could be used as a strike offense under the persistent offender statute. First, no one knew in 1990 that Washington voters would pass a "three strikes" law in 1993. Second, the fact that his robbery conviction would become a strike offense is not a direct consequence of his plea. In order to trigger the persistent offender statute,

Hamilton needed to commit additional qualifying strike offenses. "The potential for the crime to count as a strike at some later time rests only on the <u>possibility</u> that the defendant will commit future crimes." <u>State v. Lewis</u>, 141 Wn. App. 367, 395, 166 P.3d 786 (2007). Future possible eligibility for persistent offender status is not a direct consequence of a guilty plea about which a defendant must be informed before pleading guilty to a crime. <u>Id.</u>

Hamilton also argues that his plea agreement incorrectly informed him that the statutory maximum for second degree robbery was five years, when it is in fact ten years. Although the plea agreement did incorrectly state that the relevant maximum sentence was five years, this error was corrected at the plea hearing where the court stated, and Hamilton acknowledged, that robbery in the second degree "carries with it a maximum sentence of ten years."

Hamilton has not overcome the presumption that his plea was knowing, intelligent, and voluntary. Because he is unlikely to succeed in a motion to withdraw his plea, he has not established the existence of a manifest error affecting a constitutional right under RAP 2.5(a)(3). Remand to allow Hamilton to obtain a trial court ruling on a CrR 7.8 motion to withdraw his plea is unnecessary.

C.    <u>Order Correcting Judgment and Sentence</u>

Hamilton next argues that the trial court violated his due process rights by entering a 2018 "ex parte" order specifying that the no contact order in his 1990 judgment and sentence expired in 2000. We disagree.

On June 21, 2018, Hamilton filed a motion to correct his judgment and sentence, indicating that while the judgment ordered that he have no contact with

- 19 -

his two victims, it did not specify the duration of this no contact order. He submitted, with the motion, a form entitled "Note for Criminal Motion," setting the motion for consideration by Judge Laura Inveen on July 17, 2018. The motion does not appear to have been properly noted because the form itself indicates that all criminal motions are to be heard by the Assistant Chief Criminal Judge. Judge Inveen was not the Assistant Chief Criminal Judge at that time.

Hamilton refiled the motion on September 13, 2018, and used a different form, entitled "Notice of Court Date," setting the motion for consideration by Judge Nicole Phelps without oral argument on October 19, 2018, "or earliest convenience."

Judge Phelps addressed this motion on October 15, 2018 by entering a handwritten order that recognized the original judgment and sentence left the term of the no contact provision blank. The court ordered that "the judgment should reflect that the no contact [order] was for (10) ten years. However, even the 10 years has passed. Department of Corrections has terminated supervision and any NCO in judgment is hereby expired."

When a judgment and sentence is missing a term over which there is no dispute, the appropriate method for correcting the error is a motion to correct a clerical mistake under CrR 7.8(a). State v. Priest, 100 Wn. App. 451, 455, 997 P.2d 452 (2000). That rule provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an

appellate court, and thereafter may be corrected pursuant to RAP 7.2(e).

The court clearly had the authority to correct Hamilton's judgment and sentence, at his request, to reflect the correct duration of his no contact order. It also had the authority to note, for the record, that the no contact provision had expired and Hamilton was no longer under DOC supervision for that conviction. Hamilton does not identify anything erroneous in the court's ruling.

Hamilton contends that there must have been an ex parte communication about his motion between the prosecutor and the court because he had no prior notice that the court's order would be entered. An ex parte communication is a communication "made by or to a judge, during a proceeding, regarding that proceeding, without notice to a party." State v. Watson, 155 Wn.2d 574, 579, 122 P.3d 903 (2005). While the State may have submitted, as its response to Hamilton's motion, a proposed order for the court to sign, and the State may have neglected to serve a copy of its proposed order on Hamilton, we have no evidence before us that the judge was aware of any defects in the State's service on Hamilton. The court did not abuse its discretion in entering the order proposed by the State.

And, in any event, the court gave Hamilton the relief he sought—it granted his motion to amend the judgment and sentence. Only an aggrieved party may appeal. State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605 (2003). An aggrieved party is one whose personal rights or pecuniary interests have been affected. Id. Hamilton is not an aggrieved party to the 2018 order because it has no effect on his personal rights or pecuniary interests.

In his SAG, Hamilton additionally argues that the ex parte order violated his constitutional right to be present at any stage in the criminal proceeding as well as his right to assistance of counsel. First, Hamilton himself noted this motion for the court's consideration without oral argument at the court's "earliest convenience." He can hardly complain about a process he put into motion. Second, the right to be present only extends to hearings critical to the outcome of the defendant's case. State v. Love, 183 Wn.2d 598, 608, 354 P.3d 841 (2015). Hamilton cites no case to support his contention that a post-judgment motion to correct a clerical error, noted for consideration without oral argument, is a hearing critical to the outcome of Hamilton's case.

Finally, a criminal defendant has no constitutional right to counsel in post-conviction proceedings other than first direct appeal of right. State v. Forest, 125 Wn. App. 702, 707, 105 P.3d 1045 (2005) (citing Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987)).

The trial court did not err in correcting the judgment and sentence as Hamilton asked it to do.

D.  Community custody term

Finally, Hamilton argues in his SAG that the court erred in imposing an "exceptional sentence" beyond the standard range of 3 to 9 months by sentencing him to 3 months of confinement and 12 months of community custody. He argues that his sentence "exceeded the standard range sentence, and thus exceeded the 'relevant' statutory maximum." But Hamilton conflates his standard range with the statutory maximum.

"The term of community custody . . . shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.701(10). The statutory maximum for second degree robbery, a class B felony, is 10 years. RCW 9A.20.021(1)(b). Hamilton's sentence thus did not exceed the statutory maximum.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

- 23 -